No. 21-40750

# In the United States Court of Appeals
# for the Fifth Circuit

RICHARD DEVILLIER; WENDY DEVILLIER; STEVEN DEVILLIER;
RHONDA DEVILLIER; BARBARA DEVILLIER; ET AL,
*Plaintiffs-Appellees,*

*v.*

STATE OF TEXAS,
*Defendant-Appellant.*

On Appeal from the United States District Court
for the Southern District of Texas, Galveston Division

## BRIEF FOR DEFENDANT-APPELLANT
## THE STATE OF TEXAS

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

JUDD E. STONE II
Solicitor General

BENJAMIN D. WILSON
Deputy Solicitor General

NATALIE D. THOMPSON
Assistant Solicitor General
Natalie.Thompson@oag.texas.gov

Counsel for the State of Texas

# CERTIFICATE OF INTERESTED PERSONS

No. 21-40750

RICHARD DEVILLIER; WENDY DEVILLIER; STEVEN DEVILLIER;
RHONDA DEVILLIER; BARBARA DEVILLIER; ET AL.,

*Plaintiffs-Appellees,*

*v.*

STATE OF TEXAS,

*Defendant-Appellant.*

Under the fourth sentence of Fifth Circuit Rule 28.2.1, appellant, as a governmental party, need not furnish a certificate of interested persons.

/s/ Natalie D. Thompson
NATALIE D. THOMPSON
*Counsel of Record for*
*Defendant-Appellant*

i

## STATEMENT REGARDING ORAL ARGUMENT

This permissive interlocutory appeal implicates fundamental questions of state sovereign immunity and other federal courts doctrines. The district court's decision relies on an implied cause of action to sue under the Fifth Amendment. But the federal courts are no longer in the business of "[r]aising up causes of action," *Alexander v. Sandoval*, 532 U.S. 275, 287 (2001), from the Constitution. The district court's decision also rests on a novel reading of the Texas Constitution: that article I, section 17's takings clause waives the State of Texas's sovereign immunity for claims under the Fifth Amendment. To the State's knowledge, no court has ever adopted that theory. The State submits that oral argument would significantly aid the Court in analyzing these complex and important doctrinal issues.

# Table of Contents

Page

Certificate of Interested Persons ..................................................i

Statement Regarding Oral Argument ...........................................ii

Table of Authorities ................................................................iv

Introduction..........................................................................1

Statement of Jurisdiction ..........................................................1

Issues Presented ....................................................................2

Statement of the Case .............................................................2

Summary of the Argument........................................................5

Standard of Review ................................................................6

Argument.............................................................................7

    I.   The Texas Constitution's Takings Clause Does Not Waive the State's Immunity from Liability under the Federal Constitution's Takings Clause. ...............................................................7

        A.  Removal waives the State's immunity from suit, but not its immunity from liability...............................................7

        B.  The Texas Constitution does not waive immunity for *federal* takings claims. ..............................................9

    II.  The Fifth Amendment Does Not Create an Implied Cause of Action.................................................................. 13

    III. Plaintiffs' Claims are Subject to a Two-Year Statute of Limitations. ................................................................ 19

        A.  A *Bivens* claim would be subject to a two-year statute of limitations. ............................................................ 19

        B.  Under the Texas Constitution, plaintiffs' inverse condemnation claim would be subject to a two-year statute of limitations. ............................................................22

Conclusion...........................................................................25

Certificate of Service...............................................................26

Certificate of Compliance ........................................................26

# Table of Authorities

Page(s)

**Cases:**

*Alden v. Maine*,
527 U.S. 706 (1999) ................................................................................ 17, 21

*Alexander v. Sandoval*,
532 U.S. 275 (2001) ........................................................ ii, 5, 15, 16, 18

*Alexander v. Trump*,
753 F. App'x 201 (5th Cir. 2018) (per curiam) ................................ 18

*Allodial Ltd. P'ship v. N. Tex. Tollway Auth.*,
176 S.W.3d 680 (Tex. App.—Dallas 2005, pet. denied) ............................ 22, 23

*Arizonans for Official Eng. v. Arizona*,
520 U.S. 43 (1997) ................................................................................ 14, 17

*Armstrong v. Exceptional Child Ctr., Inc.*,
575 U.S. 320 (2015) ................................................................................ 16

*Austin & Nw. Ry. Co. v. Anderson*,
15 S.W. 484 (Tex. 1891) ................................................................................ 24

*Azul-Pacifico, Inc. v. City of L.A.*,
973 F.2d 704 (9th Cir. 1992) ................................................................ 14

*Barron v. City of Baltimore*,
32 U.S. 243 (1833) ................................................................................ 18

*Bay Point Props., Inc. v. Miss. Transp. Comm'n*,
937 F.3d 454 (5th Cir. 2019) ................................................................ 9

*Meyers ex rel. Benzing v. Texas*,
410 F.3d 236 (5th Cir. 2005) ........................................................ 7-8, 9

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,
403 U.S. 388 (1971) ........................................................................ *passim*

*Brown v. Nationsbank Corp.*,
188 F.3d 579 (5th Cir. 1999) ........................................................ 19, 20

*Canada Hockey, L.L.C. v. Texas A&M Univ. Athletic Dep't*,
No. 20-20503, 2022 WL 445172 (5th Cir. Feb. 14, 2022) ................................ 12

iv

*Carlson v. Green*,
    446 U.S. 14 (1980) .......................................................... 15

*Chi., B. & Q.R. Co. v. City of Chi.*,
    166 U.S. 226 (1897) .................................................... 11, 18

*City of Hous. v. Guthrie*,
    332 S.W.3d 578 (Tex. App.—Houston [1st Dist.] 2009, pet.
    denied) ........................................................................... 12

*Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*,
    140 S. Ct. 1009 (2020) ................................................... 15

*Cooper Indus., Inc. v. Aviall Servs., Inc.*,
    543 U.S. 157 (2004) ........................................................ 16

*Dansby-Giles v. Jackson State Univ.*,
    No. 3:07-CV-452, 2010 WL 780531 (S.D. Miss. Feb. 28, 2010) ........................ 9

*Davis v. Passman*,
    442 U.S. 228 (1979) ................................................... 15, 16

*Delaney v. Miss. Dep't of Pub. Safety*,
    No. 3:12CV229, 2013 WL 286365 (S.D. Miss. Jan. 24, 2013), *aff'd*,
    554 F. App'x 279 (5th Cir. 2014) ................................... 8-9

*DelCostello v. Int'l Bhd. of Teamsters*,
    462 U.S. 151 (1983) ........................................................ 19

*Edelman v. Jordan*,
    415 U.S. 651 (1974) ........................................................ 11

*Erie Railroad Co. v. Tomkins*,
    304 U.S. 64 (1938) ............................................................ 5

*First Eng. Evangelical Lutheran Church v. L.A. County*,
    482 U.S. 304 (1987) ........................................................ 16

*Gen. Servs. Comm'n v. Little-Tex Insulation Co.*,
    39 S.W.3d 591 (Tex. 2001) ................................................ 7

*Golden Gate Hotel Ass'n v. City & County of S.F.*,
    18 F.3d 1482 (9th Cir. 1994) ..................................... 14-15

*Gomez-Perez v. Potter*,
    553 U.S. 474 (2008) ........................................................ 16

*Green Valley Special Util. Dist. v. City of Schertz*,
    969 F.3d 460 (5th Cir. 2020) (en banc) ........................... 18

*Griffin v. Hawn*,
    341 S.W.2d 151 (Tex. 1960) ............................................. 9

*Guetersloh v. Texas*,
   25 F.3d 1044 (5th Cir. 1994) (per curiam) (unpublished) ................................. 12

*Harris County Hosp. Dist. v. Tomball Reg'l Hosp.*,
   283 S.W.3d 838 (Tex. 2009) ........................................................................... 10

*Hearth, Inc. v. Dep't of Pub. Welfare*,
   617 F.2d 381 (5th Cir. 1980) (per curiam)...................................................14, 18

*Hernandez v. Mesa*,
   140 S. Ct. 735 (2020) ........................................................................... 15, 17, 18

*Hosner v. De Young*,
   1 Tex. 764 (1847) ............................................................................................ 21

*Hudson v. Ark. La. Gas Co.*,
   626 S.W.2d 561 (Tex. App.—Texarkana 1981, writ ref'd n.r.e.) .....................23

*Jim Olive Photography v. Univ. of Hous. Sys.*,
   624 S.W.3d 764 (Tex. 2021), *cert. denied*, No. 21-735, 2022 WL
   827864 (U.S. Mar. 21, 2022)........................................................................... 13

*Johnson v. Ry. Express Agency, Inc.*,
   421 U.S. 454 (1975) ........................................................................................ 21

*Kazmir v. Benavides*,
   288 S.W.3d 557 (Tex. App.—Houston [14th Dist.] 2009, no pet.)............. 23, 24

*King-White v. Humble Indep. Sch. Dist.*,
   803 F.3d 754 (5th Cir. 2015)............................................................................20

*Knick v. Twp. of Scott*,
   139 S. Ct. 2162 (2019) ................................................................................14, 21

*Lake Country Ests., Inc. v. Tahoe Reg'l Plan. Agency*,
   440 U.S. 391 (1979) ........................................................................................ 13

*Lapides v. Bd. of Regents of Univ. Sys. of Ga.*,
   535 U.S. 613 (2002)........................................................................................... 8

*Livadas v. Bradshaw*,
   512 U.S. 107 (1994) ........................................................................................ 14

*Lombardo v. Pa., Dep't of Pub. Welfare*,
   540 F.3d 190 (3d Cir. 2008) .........................................................................8, 22

*Maine Cmty. Health Options v. United States*,
   140 S. Ct. 1308 (2020) .................................................................................... 17

*Manning v. Mining & Minerals Div. of the Energy, Minerals & Nat. Res.
   Dep't*,
   144 P.3d 87 (N.M. 2006).................................................................................. 16

vi

*Martinez v. Texas Dep't of Crim. Just.*,
  300 F.3d 567 (5th Cir. 2002) ............................................................. 10

*McCamon & Lang Lumber Co. v. Trinity & B.V. Ry. Co.*,
  133 S.W. 247 (Tex. 1911) ............................................................ 11, 23

*McDonald v. City of Chi.*,
  561 U.S. 742, 759 (2010) ................................................................. 11

*Monell v. Dep't of Soc. Servs. of City of N.Y.*,
  436 U.S. 658 (1978) ................................................................... 13, 14

*Nueces County Drainage & Conservation Dist. No. 2 v. Bevly*,
  519 S.W.2d 938 (Tex. App.—Corpus Christi 1975, writ ref'd
  n.r.e.) ........................................................................................ 24

*Occidental Life Ins. Co. v. E.E.O.C.*,
  432 U.S. 355 (1977) ........................................................................ 20

*Owens v. Okure*,
  488 U.S. 235 (1989) ........................................................................ 20

*Pathria v. Univ. of Tex. Health Sci. Ctr. at San Antonio*,
  No. 12-CV-338, 2013 WL 265241 (W.D. Tex. Jan. 23, 2013), *aff'd*,
  531 F. App'x 454 (5th Cir. 2013) ........................................................ 9

*Pennhurst State Sch. & Hosp. v. Halderman*,
  465 U.S. 89 (1984) .................................................................... 10, 13

*Perez v. Region 20 Educ. Serv. Ctr.*,
  307 F.3d 318 (5th Cir. 2002) ............................................................ 10

*Reata Constr. Corp. v. City of Dall.*,
  197 S.W.3d 371 (Tex. 2006) ......................................................... 9, 21

*Redgrave v. Ducey*,
  953 F.3d 1123 (9th Cir. 2020), *certified question answered*, 493 P.3d
  878 (Ariz. 2021). ............................................................................. 8

*San Jacinto River Auth. v. Medina*,
  627 S.W.3d 618 (Tex. 2021) .............................................................. 7

*Skinner v. Gragg*,
  650 F. App'x 214 (5th Cir. 2016) (per curiam) ...................................... 8

*Sossamon v. Texas*,
  563 U.S. 277 (2011) ........................................................................ 11

*State v. Holland*,
  221 S.W.3d 639 (Tex. 2007) ............................................................. 10

*Steele v. City of Hous.*,
    603 S.W.2d 786 (Tex. 1980) ...................................................... 10, 12
*Strong v. Demopolis City Bd. of Educ.*,
    515 F. Supp. 730 (S.D. Ala. 1981) (mem. op.) .................................. 18
*Stroud v. McIntosh*,
    722 F.3d 1294 (11th Cir. 2013) ................................................... 8
*Tarrant County Water Control & Improvement Dist. No. 1 v. Reid*,
    203 S.W.2d 290 (Tex. App.—Fort Worth 1947, writ ref'd n.r.e.) .............. 23, 24
*Texas Dep't of Transp. v. Jones*,
    8 S.W.3d 636 (Tex. 1999) (per curiam) .......................................... 13
*Texas Dep't of Transp. v. Sefzik*,
    355 S.W.3d 618 (Tex. 2011) (per curiam) ....................................... 10
*Texas Nat. Res. Conservation Comm'n v. IT-Davy*,
    74 S.W.3d 849 (Tex. 2002) ...................................................... 9
*Town of Flower Mound v. Stafford Ests. Ltd. P'ship*,
    135 S.W.3d 620 (Tex. 2004) ..................................................... 13
*Trant v. Oklahoma*,
    754 F.3d 1158 (10th Cir. 2014) .................................................. 8
*Tucker v. City of Corpus Christi*,
    622 S.W.3d 404 (Tex. App.—Corpus Christi 2020, pet. denied) ................... 22
*Webster v. Fall*,
    266 U.S. 507 (1925) ............................................................. 16
*Whitley v. Hanna*,
    726 F.3d 631 (5th Cir. 2013) .................................................... 6
*Wichita Falls State Hosp. v. Taylor*,
    106 S.W.3d 692 (Tex. 2003) ..................................................... 21
*Will v. Mich. Dep't of State Police*,
    491 U.S. 58 (1989) ............................................................. 14
*Wilson v. Garcia*,
    471 U.S. 261 (1985) ............................................................ 20
*Ziglar v. Abbasi*,
    137 S. Ct. 1843 (2017) .................................................... 15, 16, 17

**Constitutional Provisions, Statutes, and Rules:**

U.S. Const.:
    amend. IV ...................................................................... 15

amend. V ............................................................................*passim*

amend. XIV.............................................................. 6, 17, 18

Tex. Const. art. I, § 17 ................................................*passim*

28 U.S.C.:

§ 1292(b)................................................................... 1, 4

§ 1331....................................................................... 1

§ 1367....................................................................... 1

§ 1367(a) .................................................................. 3

§ 1441 ...................................................................... 1

§ 1441(a) .................................................................. 3

§ 1491 ...................................................................... 17

42 U.S.C. § 1983 ...........................................................*passim*

Tex. Civ. Prac. & Rem. Code § 16.003(a) ...........................22

Fifth Circ. R. 28.2.1 ........................................................i

## Introduction

Plaintiffs allege their property was flooded during Hurricane Harvey and Tropical Storm Imelda. Relying on an implied cause of action supposedly created by the Fifth Amendment, they sued the State of Texas for inverse condemnation. The district court approved, concluding (1) the Texas Constitution's Takings Clause suffices to waive Texas's sovereign immunity from liability not only for claims arising under the Texas Constitution, but also for claims arising under the United States Constitution and (2) the United States Constitution creates an implied cause of action plaintiffs can use to sue the State. It then refused to dismiss the claims arising from Hurricane Harvey in the face of the two-year time bars that would apply if plaintiffs' claims were brought under 42 U.S.C. section 1983, *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), or Texas law. Each of these errors requires reversal.

## Statement of Jurisdiction

The district court had jurisdiction pursuant to 28 U.S.C. sections 1331, 1367, and 1441. This Court has jurisdiction pursuant to 28 U.S.C. section 1292(b).

## Issues Presented

1. Whether the Texas Constitution's Takings Clause waives the State of Texas's sovereign immunity from liability for monetary damages sought under the United States Constitution's Takings Clause. *See* U.S. Const. amend. V; Tex. Const. art. I, § 17.

2. Whether the Fifth Amendment's Takings Clause creates an implied cause of action for inverse condemnation that is available against the states.

3. Whether, if the Fifth Amendment's Takings Clause supplies an implied cause of action, the relevant limitations period is the two-year statute of limitations applicable to *Bivens* actions, section 1983 suits, and analogous takings claims under the Texas Constitution.

## Statement of the Case

In these consolidated lawsuits, over a hundred property owners sued "the State of Texas" over the design, construction, maintenance, and operation of Interstate Highway 10. ROA.1167–68. Plaintiffs own property north of IH-10 in east Texas. ROA.1168, 1176–77. They seek compensation for flooding they allege occurred on their property during Hurricane Harvey (in August 2017) and Tropical Storm Imelda (in September 2019). ROA.1172–73.

Plaintiffs allege that during the two storms, a concrete barrier that divides the east- and west-bound traffic on IH-10 acted as a dam, preventing flood waters from moving onto the southern lanes of IH-10. ROA.1170–71. Thus, they allege, the flood waters backed up north of the highway, resulting in "impoundment of rainwater runoff on Plaintiffs' property for days[.]" ROA.1174. This caused damage to

plaintiffs' real and personal property in three specific ways. ROA.1174–75. First, plaintiffs allege that "[p]ortions of Plaintiffs' homes, businesses, and/or other improvements have been damaged and/or destroyed, necessitating remedial measures such as tearing out of soiled walls, removing mold-prone insulation, replacing ruined floors, replacing garage doors and other exterior features, and requiring the repair of a vast array of structural components." ROA.1174. Second, plaintiffs allege the two floods "interfered with the ability to use their land and personal property for their intended purposes," which "severely interfered with their reasonable investment-backed expectations regarding the occupancy and use of their property." ROA.1174; *see also* ROA.1175. Finally, they allege "appliances, furniture, tools, machinery," and other personal property were damaged or destroyed by the water. ROA.1175.

Seeking to represent a class of similarly situated property owners, plaintiffs sued the State of Texas for inverse condemnation under the Fifth Amendment, U.S. Const. amend. V, and the Texas Constitution's Takings Clause, Tex. Const. art. I § 17. ROA.1165–66.

The first of these consolidated lawsuits was filed on May 27, 2020, in state court. ROA.74–96. The State filed an answer, ROA.151–53, then removed the case to the Southern District of Texas based on federal question jurisdiction under 28 U.S.C. section 1441(a) and supplemental jurisdiction under 28 U.S.C. section 1367(a), ROA.68–96. That case was subsequently consolidated with three other lawsuits in which other property owners brought the same claims. ROA.1127–29; *see also* ROA.1940–74, ROA.2286–2391, ROA.2733–2839. Once the lawsuits were

consolidated, the State moved for judgment on the pleadings as to plaintiffs' Fifth Amendment inverse condemnation claims (among others not relevant here). ROA.1199–1219.

The State made three arguments relevant to this appeal. First, the State argued that claims for inverse condemnation under the Fifth Amendment can be brought only under 42 U.S.C. section 1983, but because a sovereign state is not a "person" under section 1983, Plaintiffs lack a viable cause of action. ROA.1204–06. Second, the State argued the claims arising from flooding during Tropical Storm Harvey (in August 2017) are barred by the two-year statute of limitations applicable to section 1983 claims in Texas. ROA.1206. Finally, the State argued its sovereign immunity *from liability* bars Plaintiffs' Fifth Amendment claims for money damages notwithstanding the waiver of immunity *from suit* effected by its removal to federal court. ROA.1206–07.

The magistrate judge recommended that the district court deny the State's motion, ROA.1271–91, which the district court did, ROA.1379–80. The district court, however, certified the order for interlocutory appeal pursuant to 28 U.S.C. section 1292(b), finding that the order involves "a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal might materially advance the ultimate termination of the litigation." ROA.1380; *see* 28 U.S.C. § 1292(b). The State asked this Court for permission to appeal the interlocutory order pursuant to 28 U.S.C. section 1292(b), and the Court granted its request. *See* Order (No. 21-90043) (Oct. 8, 2021).

## Summary of the Argument

**I.**   The State is entitled to judgment on the pleadings because it is immune from liability for money damages, money damages are what plaintiffs seek, and its immunity has not been waived. The district court erred in concluding that article I, section 17 of the Texas Constitution waives immunity for claims based on the federal Constitution's Takings Clause. Removal to federal court waives immunity from suit there, but not state-law immunity from liability. The Texas Constitution's Takings Clause has been held to waive immunity for inverse condemnation claims brought under its own guarantee of just compensation, but a waiver of immunity for state-law claims does not extend to federal-law claims, no matter how analogous. Waivers of sovereign immunity are claim-specific. They also must be explicit and unambiguous. The Texas Constitution's Takings Clause is not a waiver of the State's immunity from liability under the Fifth Amendment's Takings Clause.

**II.**   Even if sovereign immunity were no bar, plaintiffs would also lack a cause of action to sue the State for a Fifth Amendment taking. There is no dispute that the cause of action provided by 42 U.S.C. section 1983 is not available against the State. And the Fifth Amendment's Takings Clause does not create an implied cause of action. As the Supreme Court has emphasized in recent years, it is for Congress, not the federal courts, to create causes of action providing judicial remedies. *See Sandoval*, 532 U.S. at 286. Any common law authority to recognize a new cause of action was set aside in *Erie Railroad Co. v. Tomkins*, 304 U.S. 64 (1938). The district court erred in finding an implied cause of action in the Fifth Amendment itself.

Moreover, any implied cause of action under the Fifth Amendment would be available against the federal government, but not the states. It is the Fourteenth Amendment's due process clause—not the Fifth Amendment—that requires the states to pay just compensation for takings. No one here contends the Fourteenth Amendment creates an implied cause of action. Although Congress can use its section 5 enforcement power to create a cause of action—and has done so in section 1983—it has not created a cause of action for suits against states.

**III.** Even if all that were wrong, much of plaintiffs' alleged damages are barred by limitations. Their claims arising from damage caused by Hurricane Harvey were filed more than two years after the flooding occurred in 2017. If plaintiffs' inverse condemnation claims were brought under section 1983, an implied cause of action under the Fifth Amendment using the *Bivens* rationale, or even under the Texas Constitution, the limitations period would be two years. Section 1983 and *Bivens* claims are subject to Texas's two-year statute of limitations for personal injury claims. And Texas inverse condemnation claims based on damage to property—as opposed to physical appropriation—must also be brought within two years. The district court refused to apply any of these analogous limitations periods, instead favoring the six-year period enacted by Congress for claims against the federal government or a ten-year prescriptive period for adverse possession that no Texas court would apply to claims for damages like plaintiffs' claims. That too was error.

## Standard of Review

The district court's denial of the State's motion to dismiss is reviewed de novo. *See Whitley v. Hanna*, 726 F.3d 631, 637 (5th Cir. 2013).

**A R G U M E N T**

## I. The Texas Constitution's Takings Clause Does Not Waive the State's Immunity from Liability under the Federal Constitution's Takings Clause.

Removal to federal court waives state sovereign immunity from suit in federal court, but it does not waive the state's underlying sovereign immunity from liability. That immunity remains intact unless it has otherwise been waived or abrogated. The State has immunity from liability for monetary damages, which is what plaintiffs' inverse condemnation claims seek. And plaintiffs cannot show a waiver of the State's immunity from liability. The Texas Constitution's Takings Clause waives immunity for claims under itself, but not for claims under the federal Constitution. The district court erred in refusing to dismiss plaintiffs' Fifth Amendment inverse condemnation claims.

### A. Removal waives the State's immunity from suit, but not its immunity from liability.

Under Texas law, "[s]overeign immunity encompasses two principles: immunity from suit and immunity from liability." *Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 594 (Tex. 2001). "Immunity from suit bars a suit against the State unless the Legislature expressly gives consent," and "[i]mmunity from liability protects the State from judgments even if the Legislature has expressly given consent to sue." *Id.*; *see also San Jacinto River Auth. v. Medina*, 627 S.W.3d 618, 622 (Tex. 2021) ("Sovereign and governmental immunity protect the state and its political subdivisions, respectively, from suit and liability absent the state's express waiver."). As this Court recognized in *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236

(5th Cir. 2005), removing a case to federal court waives immunity from suit in federal court, but not immunity from liability. *Id.* at 252–55. That is because "removal is a form of voluntary invocation of a federal court's jurisdiction sufficient to waive the State's otherwise valid objection to litigation of a matter . . . in a federal forum." *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 624 (2002). But removal says nothing about the state's independent immunity from being held liable, which is a creature of state law. *Myers*, 410 F.3d at 255.

This Court has long recognized that "the Constitution permits and protects a state's right to relinquish its immunity from suit while retaining its immunity from liability, or vice versa." *Id.* at 255; *see also Skinner v. Gragg*, 650 F. App'x 214, 218 (5th Cir. 2016) (per curiam). Other courts agree. *See Trant v. Oklahoma*, 754 F.3d 1158, 1172 (10th Cir. 2014) ("A state enjoys another kind of sovereign immunity besides immunity from suit that it may invoke even after agreeing to removal— immunity from liability."); *Stroud v. McIntosh*, 722 F.3d 1294, 1301 (11th Cir. 2013) ("[A] state, if it chooses, can retain immunity from liability for a particular claim even if it waives its immunity from suit in federal courts"); *Lombardo v. Pa., Dep't of Pub. Welfare*, 540 F.3d 190, 199 (3d Cir. 2008) (same); *cf. Redgrave v. Ducey*, 953 F.3d 1123, 1125 (9th Cir. 2020) (certifying question whether Arizona law provides immunity from liability for the claims at issue in a removed case), *certified question answered*, 493 P.3d 878 (Ariz. 2021). And numerous courts in this circuit have recognized a defendant's state-law immunity from liability despite removal and the resulting waiver of immunity from suit. *See, e.g.*, *Delaney v. Miss. Dep't of Pub. Safety*, No. 3:12CV229, 2013 WL 286365, at *4 (S.D. Miss. Jan. 24, 2013), *aff'd*, 554 F.

App'x 279 (5th Cir. 2014); *Pathria v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, No. 12-CV-338, 2013 WL 265241, at *1 (W.D. Tex. Jan. 23, 2013), *aff'd*, 531 F. App'x 454 (5th Cir. 2013); *Dansby-Giles v. Jackson State Univ.*, No. 3:07-CV-452, 2010 WL 780531, at *4 (S.D. Miss. Feb. 28, 2010).

Texas has immunity from liability in any suit seeking "to control state action," including through a claim for money damages. *Texas. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 856 (Tex. 2002) (citing, *inter alia*, *Griffin v. Hawn*, 341 S.W.2d 151, 152 (Tex. 1960) ("Where the purpose of a proceeding against state officials is to control action of the State or subject it to liability, the suit is against the State and cannot be maintained without the consent of the Legislature.")); *see Bay Point Props., Inc. v. Miss. Transp. Comm'n*, 937 F.3d 454, 456–57 (5th Cir. 2019). Here, plaintiffs' claims seek to control the State by compelling it to pay them monetary damages. *See Reata Constr. Corp. v. City of Dall.*, 197 S.W.3d 371, 374 (Tex. 2006). Such a claim is barred by the State's immunity from liability. *See Myers*, 410 F.3d at 255.

Absent some waiver, State's sovereign immunity from liability for money damages remains intact.

## B. The Texas Constitution does not waive immunity for *federal* takings claims.

The Texas Constitution's Takings Clause provides: "No person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made[.]" Tex. Const. art. I, § 17. The Texas Supreme Court has long held that this provision is "itself . . . a waiver of [sovereign] immunity."

*Steele v. City of Hous.*, 603 S.W.2d 786, 791 (Tex. 1980) (citing Tex. Const. art. I, § 17); *see State v. Holland*, 221 S.W.3d 639, 643 (Tex. 2007) (applying the waiver to a claim against the state). Because it is similar in content to the Fifth Amendment's Takings Clause, the district court thought it must also waive immunity for takings claims under the federal Constitution too:

> It logically follows that if the State has expressly waived immunity from liability for the taking of property without adequate compensation, that clear and unambiguous waiver applies with equal force to takings claims whether they are based on the Texas Constitution or the Fifth Amendment to the United States Constitution.

ROA.1284. This was error.

**1.** Plaintiffs cannot transform a waiver of immunity from state-law claims into a waiver of immunity for federal-law claims. So this Court has repeatedly held that a State's waiver of sovereign immunity for a state claim does not waive immunity for an analogous federal claim. *See Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 332 (5th Cir. 2002); *Martinez v. Texas Dep't of Crim. Just.*, 300 F.3d 567, 575–76 (5th Cir. 2002). That is in accord with Texas law, which recognizes that a waiver of sovereign immunity is limited to "the particular claims at issue." *Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 620 (Tex. 2011) (per curiam); *cf. Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 n.9 (1984) ("[A] State's waiver of sovereign immunity in its own courts is not a waiver of [its sovereign] immunity in the federal courts.").

**2.** A waiver of immunity also must be explicit. *See, e.g.*, *Harris County Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 844 (Tex. 2009). That is as true under

Texas law as it is under federal law, where a waiver of sovereign immunity must be "unequivocally expressed." *Sossamon v. Texas*, 563 U.S. 277, 288 (2011). Where the law "is susceptible of multiple plausible interpretations, including one preserving immunity, [federal courts] will not consider a State to have waived its sovereign immunity." *Id.* at 287; *see also Edelman v. Jordan*, 415 U.S. 651, 673 (1974) (waiver must be "stated by the most express language or by such overwhelming implications from the text as . . . leave no room for any other reasonable construction." (internal quotation marks omitted)).

The Texas Constitution says nothing about the Fifth Amendment—it is an independent guarantee of just compensation in the event the government takes or damages private property. And there is good reason for that independent guarantee. The Takings Clause of the Texas Constitution was included in the Texas Constitution of 1876. Tex. Const. art. I, § 17. But the Takings Clause of the Federal Constitution was not incorporated against the States until 1897. *See McDonald v. City of Chi.*, 561 U.S. 742, 759 (2010) (citing *Chi., B.& Q.R. Co. v. Chi.*, 166 U.S. 226 (1897)). Before incorporation, the Texas Constitution's Takings Clause provided Constitutional protection against takings that the Federal Constitution did not.[1]

But the Texas Constitution's Takings Clause is not an explicit or unequivocal waiver of immunity for claims under the federal Takings Clause. Indeed, article I, section 17's waiver is not a carte blanche even for suits in Texas courts. It is subject

---

[1] The Constitution of 1876 added a prohibition on "damaging" property, as distinct from "taking" property, to expand the provision's scope. *See McCamon & Lang Lumber Co. v. Trinity & B.V. Ry. Co.*, 133 S.W. 247, 250–51 (Tex. 1911).

to statutory limitations, such as directives regarding the proper venue for such suits. *See, e.g.*, *City of Hous. v. Guthrie*, 332 S.W.3d 578, 593 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). It cannot be read to allow suit in federal court where such suits are not mentioned or authorized anywhere in Texas law.

**3.**    This Court recently reaffirmed that the Texas Constitution's waiver does not extend to takings claims under the federal Constitution. *See Canada Hockey, L.L.C. v. Texas A&M Univ. Athletic Dep't*, No. 20-20503, 2022 WL 445172, at *9 (5th Cir. Feb. 14, 2022) (citing *Guetersloh v. Texas*, 25 F.3d 1044 (5th Cir. 1994) (per curiam) (unpublished)).[2] To be sure, that case involved immunity from suit; the plaintiff had sued a state agency in federal court. *See Canada Hockey*, 2022 WL 445172, at *2. But the district court's logic extends to immunity from suit as much as it extends to immunity from liability. Texas precedent treats the Texas Constitution's Takings Clause as a waiver of both immunity from suit and immunity from liability. *See Steele*, 603 S.W.2d at 791. If Texas law treating it as a waiver of immunity from liability means it waives that immunity under the Fifth Amendment, it would just as much waive immunity from suit under the Fifth Amendment. That cannot be.

---

[2] In *Canada Hockey*, the plaintiffs "argue[d] . . . that immunity is abrogated when no remedy is available in state court." 2022 WL 445172, at *9. Without endorsing that premise, this Court noted that the plaintiffs could "pursue a claim under the Texas Takings Clause," meaning the abrogation argument failed and "state sovereign immunity bar[red] the federal takings claim." *Id.* The same reasoning would apply here because Plaintiffs are pursuing a state-law takings claim.

To be sure, the Texas courts at times entertain inverse condemnation claims based on the federal Constitution as well as the Texas Constitution. *See, e.g.*, *Jim Olive Photography v. Univ. of Hous. Sys.*, 624 S.W.3d 764, 772 (Tex. 2021), *cert. denied*, No. 21-735, 2022 WL 827864 (U.S. Mar. 21, 2022). The State's sovereign immunity is an affirmative defense that the State may decline or fail to raise. *See Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999) (per curiam). So, the mere existence of such suits does not establish that the State's immunity from liability is waived for federal takings claims.[3]

## II.  The Fifth Amendment Does Not Create an Implied Cause of Action.

In addition to establishing a waiver of sovereign immunity, a plaintiff seeking to hold a state liable for damages must also identify a cause of action that entitles it to sue. *See Pennhurst*, 465 U.S. at 112 ("[T]he doctrine of sovereign immunity" should not be confused "with the requirement that a plaintiff state a cause of action."). Even if the State's sovereign immunity from liability were no barrier, plaintiffs' Fifth Amendment taking claims would fail because they cannot point to a cause of action allowing such a claim against the State of Texas.

---

[3] Texas courts also adjudicate federal takings claims against local governments, *see, e.g.*, *Town of Flower Mound v. Stafford Ests. Ltd. P'ship*, 135 S.W.3d 620 (Tex. 2004), but local governments do not share the state's sovereign immunity under federal law, *see Lake Country Ests., Inc. v. Tahoe Reg'l Plan. Agency*, 440 U.S. 391, 401 (1979). And section 1983 supplies the cause of action for state-court suits against local governments. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 660 (1978).

**A.** A claim for a constitutional violation generally cannot arise directly under the Constitution. *See Hearth, Inc. v. Dep't of Pub. Welfare*, 617 F.2d 381, 382 (5th Cir. 1980) (per curiam). Rather, a claimant seeking compensation for a Constitutional violation must use a statutory cause of action, chiefly 42 U.S.C. section 1983. *See id., e.g., Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2170 (2019) (addressing a takings claim brought under section 1983); *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) ("Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States."). Indeed, as the Supreme Court has observed, section 1983 was enacted with compensation for government appropriation of private property in mind. *See Monell*, 436 U.S. at 686–87.

But there is no dispute that plaintiffs cannot invoke section 1983 against the State itself. Section 1983 states that "[e]very person" who, under color of law, subjects a citizen to deprivation of his federal rights shall be liable to that citizen." 42 U.S.C. § 1983. The State is not a "person[]" within the meaning of section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). So "[section] 1983 actions do not lie against a State." *Arizonans for Official Eng. v. Arizona*, 520 U.S. 43, 69 (1997).

**B.** The district court concluded the Fifth Amendment's Takings Clause itself provides a cause of action to sue the State. Three decades ago, the Ninth Circuit rejected that theory; it held that a claimant alleging inverse condemnation "has no cause of action directly under the United States Constitution." *Azul-Pacifico, Inc. v. City of L.A.*, 973 F.2d 704, 705 (9th Cir. 1992); *see also Golden Gate Hotel Ass'n v.*

*City & County of S.F.*, 18 F.3d 1482, 1486 (9th Cir. 1994) ("[A]ll claims of unjust taking ha[ve] to be brought pursuant to Section 1983 . . . .").

That holding was prescient. As the Supreme Court has since explained:

In the mid–20th century, the Court followed a different approach to recognizing implied causes of action than it follows now. During this "*ancien regime*," the Court assumed it to be a proper judicial function to "provide such remedies as are necessary to make effective" a statute's purpose. Thus, as a routine matter with respect to statutes, the Court would imply causes of action not explicit in the statutory text itself.

*Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017) (internal citations omitted). At the height of that *regime*, *Bivens*, 403 U.S. 388, recognized an implied right of action for damages against federal officials based on a violation of the Constitution (there, the Fourth Amendment). The Supreme Court did the same thing again just two more times. *See Carlson v. Green*, 446 U.S. 14, 19–20 (1980); *Davis v. Passman*, 442 U.S. 228, 248–49 (1979).

But all that has changed. "In later years, [the Court] came to appreciate more fully the tension between this practice and the Constitution's separation of legislative and judicial power." *Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020); *see also Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1015 (2020). In *Sandoval*, the Court explained that "private rights of action to enforce federal law must be created by Congress." 532 U.S. at 286. This rule applies even where the underlying federal law is the Constitution. *See Abbasi*, 137 S. Ct. at 1856–57. "[I]t is a significant step under separation-of-powers principles for a court to determine that it has the authority, under the judicial power, to create and enforce a

cause of action for damages . . . in order to remedy a constitutional violation." *Id.* at 1856. That is why "the Court has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.* at 1857. Along the same lines, the Court recently rejected the idea that the Supremacy Clause creates a cause of action to challenge state law as preempted. *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 329 (2015).

Implying a cause of action from the Fifth Amendment's Takings Clause would run against this grain. It is not enough to say, as the district court did, that "claims for just compensation are grounded in the Constitution itself." ROA.1279-80 (quoting *First Eng. Evangelical Lutheran Church v. L.A. County*, 482 U.S. 304, 315 (1987)). That is true enough. But whether the law's "substantive prohibition reaches a particular form of conduct" is "analytically distinct" from whether the claimant has a cause of action. *Gomez-Perez v. Potter*, 553 U.S. 474, 483 (2008); *see also Davis*, 442 U.S. at 239 ("[T]he question whether a litigant has a 'cause of action' is analytically distinct and prior to the question of what relief, if any, a litigant may be entitled to receive").[4]

---

[4] The district court reasoned that the "Supreme Court has consistently applied the Takings Clause to the states, and in so doing recognized, at least tacitly, the right of a citizen to sue the state under the Takings Clause[.]" ROA.1279 (quoting *Manning v. Mining & Minerals Div. of the Energy, Minerals & Nat. Res. Dep't*, 144 P.3d 87, 90 (N.M. 2006)). Tacit recognition is insufficient; "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004) (quoting *Webster v. Fall*, 266 U.S. 507, 511 (1925))).

Unlike common-law courts, federal courts do not have common-law power to create causes of action. *See Hernandez*, 140 S. Ct. at 742; *Sandoval*, 532 U.S. at 287. The Supreme Court has cautioned that "[i]n most instances, the Court's precedents now instruct, the Legislature is in the better position to consider if the public interest would be served by imposing a new substantive legal liability." *Abbasi*, 137 S. Ct. at 1857 (internal quotation marks omitted). It is for Congress to determine whether to exercise its enforcement power under section 5 of the Fourteenth Amendment. *See Alden v. Maine*, 527 U.S. 706, 756 (1999). It has not done so for Fifth Amendment takings claims against States. Instead, Congress created a cause of action to sue for damages for constitutional violations—including uncompensated takings—but it did not extend that action to suits against states. 42 U.S.C. § 1983; *see Arizonans for Official Eng.*, 520 U.S. at 69.[5]

Even if federal courts otherwise had the power to create a cause of action for violations of the Takings Clause (they do not), they would not be empowered to interfere with this congressional choice by creating a cause of action against states. "It would be anomalous to impute a judicially implied cause of action beyond the bounds Congress has delineated for a comparable express cause of action."

---

[5] To be sure, a Fifth Amendment inverse condemnation claim against the federal government is considered proper under Supreme Court precedent, but that is because the Tucker Act, 28 U.S.C. § 1491, is available for such claims. *Maine Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1328 n.12 (2020) ("Although there is no express cause of action under the Takings Clause, aggrieved owners can sue [the federal government] through the Tucker Act under our case law."). But Plaintiffs identify no such precedent for suits against the states, much less a statute like the Tucker Act applicable to the states.

*Hernandez*, 140 S. Ct. at 747. After all, "[w]hen Congress has 'express[ly] provi[ded] . . . one method of enforcing a substantive rule' it 'suggests that Congress intended to preclude others' recognized by the courts." *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 499–501 (5th Cir. 2020) (en banc) (Oldham, J., concurring) (quoting *Sandoval*, 532 U.S. at 290).

**C.** Finally, even if there were an implied cause of action for violations of the Fifth Amendment, it would apply only against the federal government. The Supreme Court has long recognized that the Takings Clause was "intended solely as a limitation on the exercise of power by the government of the United States, and is not applicable to the legislation of the states." *Barron v. City of Baltimore*, 32 U.S. 243, 250–51 (1833). True, the Supreme Court has also held that "the due process of law enjoined by the fourteenth amendment requires compensation to be made or adequately secured to the owner of private property taken for public use under the authority of a state." *Chi., B. & Q.R.*, 166 U.S. at 235. But no one contends that the Fourteenth Amendment creates an implied cause of action. *See Alexander v. Trump*, 753 F. App'x 201, 206 (5th Cir. 2018) (per curiam) (rejecting an implied cause of action "for violations of [a plaintiff's] Fourth and Fourteenth Amendment rights"); *Hearth*, 617 F.2d at 382–83 (rejecting an implied cause of action for a due process claim); *Strong v. Demopolis City Bd. of Educ.*, 515 F. Supp. 730, 732 (S.D. Ala. 1981) (mem. op.) (holding "the [F]ourteenth [A]mendment does not afford an implied cause of action in general and for employment discrimination in particular"). Because it is the Fourteenth Amendment, not the Fifth Amendment, that constrains

the states, an implied cause of action under the Fifth Amendment would not empower plaintiffs to sue Texas.

## III. Plaintiffs' Claims are Subject to a Two-Year Statute of Limitations.

Where a federal claim is not subject to an express statute of limitations, the default rule is to "apply the most closely analogous statute of limitations under state law." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 158 (1983); *see also id.* at 158 n.12 (applying a state statute of limitations is the "rule of thumb"). Here, that limitations period is two years, whether based on the personal injury limitations period that applies to *Bivens* and section 1983 claims or by analogy to inverse condemnation claims brought under the Texas Constitution. Plaintiffs' claims arising from flooding during Hurricane Harvey are barred by limitations.

### A.  A *Bivens* claim would be subject to a two-year statute of limitations.

Even if the Constitution provided plaintiffs an implied cause of action for inverse condemnation, their claims should be subject to the same two-year limitations period applicable to other implied causes of action under the Constitution and to analogous section 1983 claims alleging takings by local governments.

Federal courts have recognized an implied cause of action directly under the Constitution that allows—under limited circumstances—suits against federal officials alleged to have violated a claimant's constitutional rights. *See supra* at 14–15. In such cases, the federal courts apply the forum state's statute of limitations for general personal injury claims, which also applies to section 1983 claims against state and local officials. *See Brown v. Nationsbank Corp.*, 188 F.3d 579, 590 (5th Cir. 1999).

In Texas, the applicable limitations period is two years. *See id.* That is so even if Texas law provides a different statute of limitations for claims that are arguably closer analogies to the facts of a plaintiff's particular section 1983 claim. *See King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 759 (5th Cir. 2015).

The Supreme Court long ago concluded that applying a uniform rule is essential to avoiding "conflict, confusion, and uncertainty" in identifying the appropriate statute of limitations. *Wilson v. Garcia*, 471 U.S. 261, 266 (1985). There is nothing about the Fifth Amendment's Takings Clause that warrants treating it differently than the implied cause of action under *Bivens*, much less the statutory cause of action applicable to analogous inverse condemnation claims against local governments in Texas. "Predictability," after all, is "a primary goal of statutes of limitations." *Owens v. Okure*, 488 U.S. 235, 240 (1989).

The district court indicated it would instead borrow the six-year statute of limitation for inverse condemnation claims against the federal government. ROA.1282–83. To be sure, there are circumstances where a federal court will instead borrow a federal statute of limitations, but that is done only if applying the state limitations period "would be inconsistent with the underlying policies of the federal statute." *Occidental Life Ins. Co. v. E.E.O.C.*, 432 U.S. 355, 367 (1977). That might happen if, for example, the federal statute required a plaintiff to exhaust administrative remedies before bringing suit, and applying the analogous state-law statute of limitations would make exhaustion impossible or impractical. *See id.* at 368–69. There is no such conflict here. The Supreme Court recently held that a claimant alleging inverse condemnation may bring suit as soon as the "government

takes his property for public use without paying for it." *Knick*, 139 S. Ct. at 2170. And plaintiffs identify no good reason for departing from the default rule that the analogous *state* limitations period should apply.

Indeed, pairing a federal statute of limitations with a waiver of sovereign immunity found (erroneously) in the Texas Constitution's Takings Clause raises serious comity concerns. With any statute of limitations, "the length of the period allowed for instituting suit inevitably reflects a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones." *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 463–64 (1975). The federal government rightfully makes its own judgment about when to time-bar inverse condemnation claims filed against it. But the State is just as surely entitled to its own value judgment for claims against it. If the State is to be treated as having waived its sovereign immunity through its own Constitution, it should likewise be allowed to rely on its own judgment when it comes to the statute of limitations applicable to such claims. *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 (Tex. 2003) ("'[N]o State can be sued in her own courts without her consent, and then only in the manner indicated by that consent.'" (quoting *Hosner v. De Young*, 1 Tex. 764, 769 (1847)).[6]

---

[6] Any waiver of sovereign immunity likewise reflects a value judgment. *See Reata*, 197 S.W.3d at 375 (Texas courts "generally defer[] to the Legislature to waive immunity because the Legislature is better suited to address the conflicting policy issues involved"); *cf. Alden*, 527 U.S. at 757 ("principle of sovereign immunity as reflected in our jurisprudence strikes the proper balance between the supremacy of federal law and the separate sovereignty of the States").

**B.  Under the Texas Constitution, plaintiffs' inverse condemnation claim would be subject to a two-year statute of limitations.**

It was also error for the district court to rely on a Texas limitations period that no Texas court would apply to these claims. "[W]hile voluntary removal waives a State's immunity from suit in a federal forum, the removing State retains all defenses it would have enjoyed had the matter been litigated in state court." *Lombardo*, 540 F.3d at 198. The same principle would apply even if the district court were correct that the Texas Constitution waives sovereign immunity for a taking under the U.S. Constitution.

Plaintiffs seek compensation for (1) necessary repairs on their real and personal property, (2) diminution in their real property's value, and (3) "damage, destruction, and loss of personal property." ROA.1175. Under the Texas Constitution's Takings Clause, these claims would be subject to a two-year limitations period. *See Allodial Ltd. P'ship v. N. Tex. Tollway Auth.*, 176 S.W.3d 680, 684 (Tex. App.—Dallas 2005, pet. denied) (citing Tex. Civ. Prac. & Rem. Code § 16.003(a)). That statute of limitations applies to claims alleging *damage* to real property, which includes diminution in its value, and to all inverse condemnation claims based on personal property. *See Tucker v. City of Corpus Christi*, 622 S.W.3d 404, 408 (Tex. App.—Corpus Christi 2020, pet. denied); *Allodial*, 176 S.W.3d at 684.

Plaintiffs asked the district court to instead apply the ten-year prescriptive period for adverse possession under Texas law. ROA.1232. Texas courts do apply that limitations period to inverse condemnation claims based on "an actual physical

invasion or an appropriation of the land." *Allodial*, 176 S.W.3d at 684. By "physical invasion" or "appropriation," Texas courts mean "actual, physical possession, such as exists when a railroad is constructed and operated on" the land. *Tarrant County Water Control & Improvement Dist. No. 1 v. Reid*, 203 S.W.2d 290, 293 (Tex. App.—Fort Worth 1947, writ ref'd n.r.e.) (quoting *McCamon & Lang*, 133 S.W. at 249); *see, e.g.*, *Hudson v. Ark. La. Gas Co.*, 626 S.W.2d 561, 564 (Tex. App.—Texarkana 1981, writ ref'd n.r.e.) (claims for inverse condemnation based on a gas line under the plaintiffs' property involved "the 'taking' of a portion of the appellants' land—the subsurface easement—and the continued presence of the pipeline," and therefore were subject to ten-year limitations period, while claims for diminution in land's value were subject to two-year limitations period). Texas courts would not apply it to the claims for property damage alleged here.

Adverse possession is analogous if the government has permanently appropriated land, but not if the claims arise from the sort of damage to property alleged here. Physical possession for the entire ten-year period is an essential element of establishing adverse possession under Texas law. *See Kazmir v. Benavides*, 288 S.W.3d 557, 561 (Tex. App.—Houston [14th Dist.] 2009, no pet.). When the government has taken permanent possession of the claimant's property, the analogy holds. Applying the full prescriptive period—ten years—as a statute of limitations for seeking compensation allows the property owner the same lengthy period of time to ascertain someone's possession of his property.

But it makes no sense here. Plaintiffs do not allege the State has continuously, physically appropriated their land; rather, they allege the State's actions damaged it.

They claim the Texas Department of Transportation damaged their real and personal property by designing IH-10 in a way that caused temporary flooding on their property north of the highway. *See* ROA.1168–75. Their claims are based on two distinct instances of flooding, each lasting a matter of days. *See* ROA.1174. Because continuous possession is essential to adverse possession, *see Kazmir*, 288 S.W.3d at 561, adverse possession is a poor analogy to claims based on isolated instances of flooding like those at issue here.

Indeed, when it comes to flooding specifically, Texas courts distinguish between permanent submersion of property, which is a "taking" under article I, section 17, and temporary or intermittent flooding, which gives rise to a claim for "damaging" the property. *See Nueces County Drainage & Conservation Dist. No. 2 v. Bevly*, 519 S.W.2d 938, 943–45 (Tex. App.—Corpus Christi 1975, writ ref'd n.r.e.) (collecting cases); *Reid*, 203 S.W.2d at 292–94; *cf. Austin & Nw. Ry. Co. v. Anderson*, 15 S.W. 484, 485 (Tex. 1891) (distinguishing between permanent and intermittent injury to land caused by flooding for purposes of the claim's accrual). Here, plaintiffs allege intermittent flooding lasting a matter of days at a time. ROA.1168–75. That is not a permanent inundation that constitutes a "tak[ing]," as opposed to "damage[]." Tex. Const. art. I, § 17.

Plaintiffs' claims would be subject to the two-year statute of limitations if brought under the Texas Constitution (without which, under the district court's reasoning, plaintiffs could not recover at all, *see* ROA.1283). That same limitations period should apply even if the one applies to *Bivens* and section 1983 claims does not.

\* \* \*

The Texas Constitution's Takings Clause is not an unequivocal waiver of the State's sovereign immunity from liability for damages in a claim to enforce the Fifth Amendment's separate Takings Clause. There is no implied cause of action under the Fifth Amendment's Takings Clause. And even if plaintiffs could surmount sovereign immunity and had a cause of action (they cannot and do not), their claims would be subject to a two-year statute of limitations, barring recovery for the flooding caused by Hurricane Harvey in 2017.

## Conclusion

The Court should reverse and remand with instructions to dismiss plaintiffs' Fifth Amendment inverse condemnation claims, to dismiss plaintiffs' inverse condemnation claims based on flooding during Hurricane Harvey in 2017, and for further proceedings on plaintiffs' remaining claims.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Judd E. Stone II
Solicitor General

Benjamin D. Wilson
Deputy Solicitor General

/s/ Natalie D. Thompson
Natalie D. Thompson
Assistant Solicitor General
Natalie.Thompson@oag.texas.gov

Counsel for Defendant-Appellant

## Certificate of Service

On March 30, 2022, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Natalie D. Thompson
Natalie D. Thompson

## Certificate of Compliance

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,851 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Natalie D. Thompson
Natalie D. Thompson