No. 21-40750

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

Richard Devillier; Wendy Devillier; Steven Devillier;
Rhonda Devillier, Barbara Devillier; et al.,
*Plaintiffs-Appellees,*

*v.*

State of Texas,
*Defendant-Appellant.*

On Appeal from the United States District Court
for the Southern District of Texas
Galveston Division

## PLAINTIFFS-APPELLEES' BRIEF

Daniel H. Charest
E. Lawrence Vincent
BURNS CHAREST LLP
900 Jackson Street, Suite 500
Dallas, Texas 75202
469-904-4550
dcharest@burnscharest.com
lvincent@burnscharest.com

Charles Irvine
IRVINE & CONNER PLLC
4709 Austin Street
Houston, Texas 77004
713-533-1704
charles@irvineconner.com

Counsel for Plaintiffs-Appellees

<u>**CERTIFICATE OF INTERESTED PERSONS**</u>

**No. 21-40750,** *Devillier, et al. v. State of Texas*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5TH CIR. R. 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

<u>**Plaintiffs/Appellees:**</u>

Richard & Wendy Devillier; Steven & Rhonda Devillier; David & Angela McBride; Bert Hargraves; Barney & Crystal Threadgill; Barbara Devillier; David Ray; Gary Herman; Rhonda Glanzer; Chris & Darla Barrow; Dennis Dugat; Laurence Barron; Deanette Lemon; Jill White; Beverly Kiker; Yale Devillier, Individually and as Personal Representative of the Estate of Kyle H. Devillier; Charles Monroe; Jacob & Angela Fregia; Jerry & Mary Devillier; Zalphia Hankamer; Larry Bollich; Susan Bollich; Sheila Marino; William Meissner; Taylor McBride; Brian & Kathleen Abshier; Jina Daigle; Coulon Devillier; Halley Ray Sr., Halley Ray Jr. & Sheila Moor; John Rhame; Alex & Tammy Hargraves; William Devillier; Kyle & Allison Wagstaff; Kevin Sonnier; Eugenia Molthen; Bradley Moon; John Roberts; Marilyn Roberts; Savanna Sanders; Robert & Tracey Brown; Josh Baker; Lee Blue; Russell Brown; Margaret Carroll; Kevin Cormier; James & Melissa Davis; Maria Gallegos & Christopher Ferguson; Angela Hughes; Robert Laird; Harold Ledoux; Kacey Sandefur; Tifani Staner; Stephen Stelly; Randall & Patti Stout; Chris Day; Calvin Hill; Michael & Julie Weisse; Eleanor Leonard; Ivy Hamm Claude Roberts; Bryan Olson; Caren Nueman; Floyd Cline, Jr.; Kenneth Coleman; Haylea Barrow; Carol Roberts; Jenica Vidrine; Charles Collier; Sharon Crissey; James Brad Crone; Heather & James Coggin; Clovis Melancon; Leroy Speights; Crossroads Asphalt Preservation, Inc.; Fesi Energy, LLC; Brian Fischer; Curtis Laird; Devon Boudreaux; Richard Belsey; Sharon Clubb; Janet Dancer; Porter May; Cindy Perez; Cecile Jimenez; Scott Hamric; Bruce & Tina Hinds; William Olivier; Esteban Lopez; Billy Stanley; Candace Abshier; Sean Fillyaw; Autumn Minton; Brandon Sanders; Rodney Badon; Charlie Carter; Myra Wellons; Jerry Stepan; Bryan Mills; Cat 5 Resources LLC; Joan Jeffrey; Randy & Monica Brazil; Herbert & Kerry Dillard; Southeast Texas Olive, LLC; and Gulf Coast Olive Investments, LLC.

/s/ Daniel H. Charest
Daniel H. Charest
Counsel for Plaintiffs-Appellees

**Appellees' counsel:**

Daniel Henry Charest
E. Lawrence Vincent
Burns Charest LLP
900 Jackson Street, Suite 500
Dallas, Texas 75202

Charles W Irvine
Irvine & Conner PLLC
4709 Austin Street
Houston, Texas 77004

Lawrence G Dunbar
Dunbar Harder PLLC
One Riverway, Suite 1800
Houston, Texas 77056

**Defendant/Appellant:**

The State of Texas

**Appellant's counsel:**

Ken Paxton
Brent Webster
Judd E. Stone II
Benjamin D. Wilson
Natalie D. Thompson
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548

## **STATEMENT REGARDING ORAL ARGUMENT**

Counsel for Appellees requests oral argument in this matter.

The case presents (1) important issues concerning whether the Takings Clause of the Fifth Amendment to the United States Constitution provides a self-effectuating claim for just compensation and (2) questions of first impression regarding the State's ability to evade adjudication of Takings Clause claims when the State (a) has consented to the jurisdiction of the federal district court over those claims and (b) would be liable for those same claims if Appellant had not removed the actions from the Texas state courts in which they originated.

The case also presents issues of (3) whether Appellees were required to utilize a statutory vehicle—in particular 42 U.S.C. § 1983—to either bring their actions in state court or to pursue them following removal in federal court and, if not, (4) what limitations period applies to Appellees' inverse condemnation actions brought outside the ambit of section 1983 and if those claims should have been dismissed as having been brought out of time.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ..................................................ii

STATEMENT REGARDING ORAL ARGUMENT ....................................iv

TABLE OF CONTENTS ..........................................................................v

TABLE OF AUTHORITIES ......................................................................vi

STATEMENT OF ISSUES PRESENTED FOR REVIEW .........................1

STATEMENT OF THE CASE ....................................................................1

SUMMARY OF THE ARGUMENT ..........................................................4

ARGUMENT ..............................................................................................7

    I.     Property Owners May Pursue Their Fifth Amendment Takings Clause Claims Against The State In Federal Court. ...................................8

          A.    Appellees' Takings Clause claims arise directly from the Fifth Amendment to the Constitution.........................................................8

          B.    Appellees can pursue their Takings Clause claims through the subject matter jurisdiction provided by 28 U.S.C.§ 1331 and have no obligation to pursue those claims through section 1983..........12

          C.    The illegitimate consequence of the State's section 1983 argument reflects its inherent error...................................................16

          D.    The State's limitations defense was rejected correctly...................18

    II.    The State Is Not Immune From Liability For Appellees' Fifth Amendment Takings Claims. ..................................................20

          A.    By Joining the Union, The State Waived Its Immunity from Liability as to Takings Clause Claims. .............................................21

          B.    Texas Law Confirms that The State Waived Immunity from Liability for Takings Clause Claims. ...............................................25

CONCLUSION ........................................................................................32

CERTIFICATE OF SERVICE....................................................................34

CERTIFICATE OF COMPLIANCE............................................................34

# TABLE OF AUTHORITIES

## Cases

*Alden v. Maine,*
    527 U.S. 706 (1999) ................................................................................passim

*Armstrong v. Exceptional Child Ctr., Inc.,*
    575 U.S. 320 (2015) ...............................................................................15

*Armstrong v. United States,*
    364 U.S. 40 (1960) .................................................................................10

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .................................................................................1

*Azul Pacifico, Inc. v. City of Los Angeles,*
    948 F.2d 575 (9th Cir. 1991) ................................................................14

*Azul-Pacifico, Inc. v. City of Los Angeles,*
    973 F.2d 704 (9th Cir. 1992) ........................................................ 14, 15

*Banks v. FDIC,*
    374 F. App'x 532 (5th Cir. 2010) ........................................................19

*Bd. of Regents of Univ. of Wisconsin Sys. v. Phoenix Int'l Software, Inc.,*
    653 F.3d 448 (7th Cir. 2011) ........................................................ 12, 23

*Black v. N. Panola Sch. Dist.,*
    461 F.3d 584 (5th Cir. 2006) .......................................................24, 25, 27

*Blasland, Bouck & Lee, Inc. v. City of N. Miami,*
    No. 971484, 2001 WL 736006 (S.D. Fla. Feb. 7, 2001) ................................27

*Bowden v. State,*
    502 S.W.3d 913 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) ........................26

*C.M. v. Tomball Reg'l Hosp.,*
    961 S.W.2d 236 (Tex. App.—Houston [1st Dist.] 1997, no writ) .........................25

*Canada Hockey LLC v. Texas A&M Univ. Athletic Dep't,*
    No. 20-20503, 2022 WL 445172 (5th Cir. Feb. 14, 2022) ......................... 29, 30

*Cedar Point Nursery v. Hassid,*
    141 S. Ct. 2063 (2021) ........................................................................ 9, 23

*Chauvin v. State Farm Fire & Cas. Co.,*
    495 F.3d 232 (5th Cir. 2007) ..................................................................1

*Chicago, B. & Q.R. Co. v. Chicago,*
    166 U.S. 226 (1897) .................................................................................8

*City of Dallas v. Stewart,*
  361 S.W.3d 562 (Tex. 2012) ..........................................................................25

*Clark v. Barnard,*
  108 U.S. 436 (1883) ......................................................................................22

*Colorado River Water Cons. Dist. v. United States,*
  424 U.S. 800 (1976) ......................................................................................14

*Dice v. Akron, Canton, & Youngstown R.R. Co.,*
  342 U.S. 359 (1952) ......................................................................................25

*DLX, Inc. v. Kentucky,*
  381 F.3d 511 (6th Cir. 2004) ........................................................................16

*Doe v. Taylor Indep. Sch. Dist.,*
  15 F.3d 443 (5th Cir. 1994 ............................................................................25

*Dolan v. City of Tigard,*
  512 U.S. 374 (1994) ......................................................................................21

*Edelman v. Jordan,*
  415 U.S. 651 (1974) ......................................................................................29

*Edwards Aquifer Auth. v. Bragg,*
  421 S.W.3d 118 (Tex. App.—San Antonio 2013, pet. denied) ..................18

*FAA v. Cooper,*
  132 S. Ct. 1441 (2012) ..................................................................................24

*First English Evangelical Lutheran Church v. Los Angeles Cnty.,*
  482 U.S. 304 (1987) ...............................................................................10, 11

*Fitzpatrick v. Bitzer,*
  427 U.S. 445 (1976) ......................................................................................22

*Fletcher v. Peck,*
  6 Cranch 87 (1810) ......................................................................................21

*Gary W. v. State of La.,*
  622 F.2d 804 (5th Cir. 1980) ........................................................................22

*Golden Gate Hotel Ass'n v. City & County of S.F.,*
  18 F.3d 1482 (9th Cir. 1994) ........................................................................14

*Gomez-Perez v. Potter,*
  553 U.S. 474 (2008) ......................................................................................15

*Goudeau v. E. Baton Rouge Par. Sch. Bd.,*
  540 F. App'x 429 (5th Cir. 2013 .....................................................................5

*Gutersloh v. Texas,*
  25 F.3d 1044 (5th Cir. 1994) ...................................................................26

*Hander v. San Jacinto Jr. Coll.,*
  522 F.2d 204 (5th Cir. 1975) ...................................................................13

*Harris County Hosp. Dist. v. Tomball Regional Hosp.,*
  283 S.W.3d 838 (2009) .............................................................................29

*Haywood v. Drown,*
  556 U.S. 729 (2009) ...................................................................................16

*Hearth, Inc. v. Dep't of Pub. Welfare,*
  617 F.2d 381 (5th Cir. 1980) ...................................................................15

*Hilton v. South Carolina Pub. Rys. Comm'n,*
  502 U.S. 198 (1991) ............................................................................ 14, 27

*Howlett v. Rose,*
  496 U.S. 356 (1990) ...................................................................................21

*Hutto v. Finney,*
  437 U.S. 678 (1978) ...................................................................................22

*Jacobs v. United States,*
  290 U.S. 13 (1933) ................................................................................. 9, 11

*Kirby Forest Industries, Inc. v. United States,*
  467 U.S. 1 (1984) .......................................................................................11

*Knick v. Township of Scott, Pa.,*
  139 S. Ct. 2162 (2019) ......................................................................9, 11, 15

*Koch v. Texas Gen. Land Office,*
  273 S.W.3d 451 (Tex. App.—Austin 2008, pet. denied) ...................... 26, 27

*Lapides v. Board of Regents,*
  535 U.S. 613 (2002) ..................................................................... 16, 22, 23, 28

*Manning v. N.M. Energy, Minerals & Natural Resources Dep't.,*
  144 P.2d 87 (N.M. 2006) ......................................................................9, 17, 21

*Martinez v. Texas Dep't of Crim. Justice,*
  300 F.3d 567 (5th Cir. 2002) ...................................................................28

*Meyers ex rel. Benzing v. Texas,*
  410 F.3d 236 (5th Cir. 2005) ..................................................... 6, 16, 19, 24

*Mills v. Warner Lambert Co.,*
  157 S.W.3d 424 (Tex. 2005) ................................................................. ii, 25

*Monongahela Navigation Co. v. United States*,
   148 U.S. 312 (1893) ....................................................................................11

*Mosher v. City of Phoenix*,
   287 U.S. 29 (1932) ......................................................................................12

*Murr v. Wisconsin*,
   137 S. Ct. 1933 (2017) ................................................................................9

*Palazzolo v. Rhode Island*,
   533 U.S. 606 (2001) ....................................................................................8

*PennEast Pipeline Co., LLC v. New Jersey*,
   141 S. Ct. 2244 (2021) ........................................................................21, 24

*Pennhurst State School & Hosp. v. Halderman*,
   465 U.S. 89 (1984) ......................................................................................28

*Perez v. Region 20 Educ. Serv. Ctr.*,
   307 F.3d 318 (5th Cir. 2002) ......................................................................28

*Reed v. United Transp. Union*,
   488 U.S. 319 (1989) ....................................................................................18

*Sammons v. United States*,
   860 F.3d 296 (5th Cir. 2017) ......................................................................24

*San Diego Gas & Electric Co. v. San Diego*,
   450 U.S. 621 (1981) ....................................................................................11

*SDDS, Inc. v. State*,
   2002 S.D. 90, 650 N.W.2d 1 ......................................................................20

*Seaboard Air Line R. Co. v. United States*,
   261 U.S. 299 (1923) ....................................................................................11

*Seven Up Pete Venture v. Schweitzer*,
   523 F.3d 948 (9th Cir. 2008) ......................................................................14

*Sossamon v. Texas*,
   563 U.S. 277 (2011) ....................................................................................29

*Steele v. City of Houston*,
   603 S.W.2d 786 (Tex. 1980) ............................................................25, 30, 31

*Stiles v. Mem'l Hermann Healthcare Sys.*,
   213 S.W.3d 521 (Tex. App.—Beaumont 2007, pet. denied) ......................25

*Sullivan v. Little Hunting Park, Inc.*,
   396 U.S. 229 (1969) ....................................................................................22

*Sw. Bell Tel., L.P. v. Harris Cty. Toll Rd. Auth.*,
  282 S.W.3d 59 (Tex. 2009) ................................................................26

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*,
  535 U.S. 302 (2002) .........................................................................10

*Texas Dep't of Trans. v. Sefzik*,
  355 S.W.3d 618 (Tex. 2011) ..............................................................28

*Texas Parks & Wildlife Dep't v. Sawyer Trust*,
  354 S.W.3d 384 (Tex. 2011) ..............................................................26

*Tyler v. Mmes. Pasqua & Toloso*,
  748 F.2d 283 (5th Cir. 1984) .............................................................13

*Union Pac. R. Co. v. Williams*,
  85 S.W.3d 162 (Tex. 2002) ................................................................25

*United States v. Causby*,
  328 U.S. 256 (1946) ..........................................................................11

*United States v. Clarke,*
  445 U.S. 253 (1980) ..........................................................................11

*United States v. Dickinson*,
  331 U.S. 745 (1947) ...............................................................11, 19, 23

*Victorian v. Miller*,
  813 F.2d 718 (5th Cir. 1987) .............................................................13

*Villarreal v. Smith*,
  201 F. App'x 192 (5th Cir. 2006) .........................................................7

*Ware v. United States*,
  626 F.2d 1278 (5th Cir. 1980) ...........................................................24

*Will v. Mich. Dep't of State Police*,
  491 U.S. 58 (1989) ............................................................................14

*Ziglar v. Abbasi*,
  137 S. Ct. 1843 (2017) ......................................................................15

**Statutes**

28 U.S.C. § 1292 ....................................................................................4

28 U.S.C. § 1343 .............................................................................12, 13

28 U.S.C. § 1367 ....................................................................................6

28 U.S.C. § 2501 ..................................................................................18

TEX. GOV'T CODE § 2007.002(5)..........................................................................26

TEX. GOV'T CODE § 311.034..............................................................................29

**Other Authorities**

2 Joseph Story, COMMENTARIES ON THE CONSTITUTION OF THE UNITED STATES §
    1399 (5th ed. 1891)......................................................................................9

6 P. Nichols, EMINENT DOMAIN § 25.41 (3d rev. ed. 1972) .........................................11

<u>Discourses on Davila</u>, in 6 WORKS OF JOHN ADAMS 280 (C. Adams ed. 1851) .............9

**Constitutional Provisions**

Tex. Const. Art. I, § 17....................................................................................25

U.S. CONST. AMEND. V.......................................................................................8

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.  Whether Appellees are required to pursue their Fifth Amendment Takings claims pursuant to 42 U.S.C. § 1983 in federal court.

2.  Whether a federal court may adjudicate Appellees' claims for just compensation under the Takings Clause of the Fifth Amendment against the State of Texas.

3.  What is the correct limitations period applicable to Appellees' Takings claims and whether the State has met its burden to compel dismissal of those claims based on a limitations defense.

## STATEMENT OF THE CASE

Appellees, Plaintiffs below, ("Property Owners") own property on the north side of Interstate Highway 10 ("IH-10") in Chambers, Jefferson, and Liberty Counties, Texas. Property Owners filed separate lawsuits in Texas state district courts alleging that their "properties were inundated, taken, destroyed, and/or damaged by the State of Texas by its design, construction, operation, and/or maintenance of IH-10." ROA.1271.[1] In those state court actions, Property Owners asserted claims against the State of Texas (the "State") pertaining to inverse condemnation based on not only article I, section 17 of the Texas State Constitution but also the Takings Clause of the

---

[1] Because this appeal arises from the denial of a Fed. R. Civ. P. 12(c) motion, all facts as alleged by Appellees must be accepted as true and viewed in the light most favorable to Appellees. *Chauvin v. State Farm Fire & Cas. Co.*, 495 F.3d 232, 237 (5th Cir. 2007). The State does not assert that Appellees have failed to plead plausible takings claims. Therefore, for purposes of this appeal, Appellees' claims should be taken as valid, and it should be accepted that the State has taken Appellees' property without just compensation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Fifth Amendment to the United States Constitution, alleging that the State had taken their property without just compensation. ROA.1, ROA.1909, ROA.2280, ROA.2723.

"To facilitate the use of IH-10's eastbound lanes as an evacuation route during periods of flooding, the Texas Department of Transportation recently raised the elevation of IH-10, widened it from four to six lanes, and installed a 32-inch impenetrable, solid concrete traffic barrier on the highway's centerline." ROA.1274.



"This barrier, abnormal for its elimination of the ordinary ground level drainage slots, effectively created a dam protecting the southside of the freeway from flooding by barricading all rainfall on the northside. Rainfall that would otherwise run overtop the roadway and continue downstream towards the Gulf of Mexico instead stopped at the barrier and caused backwater flooding onto Plaintiffs' properties on the northside of the barrier." *Id.*





The State removed these cases from the Texas courts in which they were originally filed to the appropriate federal district courts. Ultimately the cases were consolidated before the Hon. Jeffrey V. Brown in the Galveston Division of the Southern District of Texas. ROA.1127.

After Property Owners filed their First Amended Master Complaint, ROA.1164, the State moved for judgment on the pleadings as to *inter alia* Count 2 of that pleading – Plaintiffs' claims under the Fifth Amendment's Takings Clause, ROA.1199. Following briefing and argument, Magistrate Judge Andrew Edison submitted a Memorandum and Recommendation concluding that the State's motion should be denied. ROA.1271. Judge Brown adopted the Memorandum and Recommendation "in its entirety as the holding of the court," denied the State's motion, and certified that order for permissive interlocutory appeal. ROA.1379.

This Court granted Appellant's unopposed request for interlocutory review pursuant to 28 U.S.C. § 1292. ROA.1383.

## SUMMARY OF THE ARGUMENT

Property Owners brought their claims in Texas state courts of general jurisdiction which had the jurisdiction to hear all claims—both federal and state—against the State. The State removed these cases and, thereby, waived its immunity from suit in federal court. While the basis for removal, i.e. the State's assertion that Property Owners must bring the federal claims under 42 U.S.C. § 1983, was incorrect, removal remains proper under 28 U.S.C. § 1331 because of the federal question posed by the Property Owners' Fifth Amendment takings claims. The actions having been removed to federal court, Property Owners may proceed with both their Texas-based <u>and</u> federal-based Takings claims in that forum.

In this interlocutory appeal, the State raises three of the arguments it had urged to the district court seeking dismissal of Property Owners' Takings Clause claims.[2] None are valid.

***First***, even though Property Owners have <u>never</u> invoked 42 U.S.C. § 1983 to bring their Takings Clause claims, the State argues that a party <u>must</u> utilize section 1983 to pursue a federal inverse condemnation claim. And, from that proposition, the State asserts Property Owners' claims should have been dismissed since section 1983 does not apply to states. *See* Brief for Defendant-Appellant the State of Texas, at 14 (hereafter "State's Brief").

The State is wrong because Property Owners' removed claims do not have to be prosecuted under section 1983. Section 1983 does not apply to claims against a state. Moreover, if the State were right, it could remove a valid claim in state court to a federal court based on section 1983, then dismiss that otherwise-valid claim because section 1983 does not apply to it. For good reason, no court has held the way the State urges.

***Second***, the State argues that, even though it has waived its immunity from suit in federal court, it retains an immunity from liability which requires dismissal of Property Owners' Fifth Amendment claims. *See* State's Brief, at 9-11.

---

[2] Although the State previously advanced other arguments in requesting dismissal of Appellees' federal, as well as their state, takings claims, it has not presented those arguments here and thus has waived them for purposes of this appeal. *Goudeau v. E. Baton Rouge Par. Sch. Bd.*, 540 F. App'x 429, 436 (5th Cir. 2013).

Again, the State is wrong. In removing Property Owners' claims from the Texas state courts in which they were originally filed, the State consented to federal jurisdiction for all of Appellees' claims—both state and federal. *See Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 242-50 (5th Cir. 2005); *see also id.*, at 254-55 (agreeing with the view "that state sovereign immunity consists of two separate and different kinds of immunity, immunity from suit and immunity from liability"). Federal subject matter jurisdiction over Property Owners' Fifth Amendment claims derives from the general federal question jurisdictional statute, 28 U.S.C. § 1331. And, with that jurisdiction, the federal court has supplemental jurisdiction over the state claims under 28 U.S.C. § 1367.

And, as to immunity from liability, the protection of private property rights against the government has existed since the founding of this country. The Fifth Amendment's charge, "nor shall private property be taken for public use, without just compensation" provides a self-executing safeguard against any governmental taking. The State waived immunity from liability for takings clams both by joining the Union and by its own waiver of takings claims under the Texas Constitution.

And, ***third***, continuing its assertion that section 1983 serves as a mandatory vehicle for all Takings Clause claims, the State argues that Appellees' claims "based on Hurricane Harvey" are barred by limitations. *See* State's Brief, at 19-24. The State's contention fails because the State's section 1983 argument is invalid. And, in any event, dismissal based on the limitations defense would be improper because the State failed to carry its burden of proof.

## **ARGUMENT**

The ultimate question posed by this appeal is whether a federal court can <u>ever</u> adjudicate a claim against a State to recover the just compensation guaranteed by the Takings Clause of the Fifth Amendment to the United States Constitution. The answer to that question is yes. And this case presents the exact circumstance for that to happen because the State has waived both its immunity from suit and its immunity from liability.

By removing these cases to federal court, the State consented to suit. While the State cites cases addressing immunity from suit, the effect of its removal is not in serious dispute. And both by joining the Union (and joining the compact that includes the Fifth Amendment) and by waiving immunity from suit for takings claims in its own constitution, the State waived immunity from liability as respect Takings Clause claims. The law permits no other conclusion.

The State's resort to section 1983 misses the mark. No court has held that section 1983 provides the exclusive vehicle for asserting Takings Clause claims against a state. To the contrary, long standing Supreme Court precedent provides that the Takings Clause serves as a self-effectuating claim and provides a cause of action which may be brought under the general federal question jurisdiction provided by Congress. And the State's resort to section 1983's limitations period fails because it simply does not apply.

## I.     Property Owners May Pursue Their Fifth Amendment Takings Clause Claims Against The State In Federal Court.

The first question to be addressed is that of jurisdiction. *Villarreal v. Smith*, 201 F. App'x 192, 194 (5th Cir. 2006) ("We will first address the issue of jurisdiction. Federal courts have an obligation to thoroughly examine their own jurisdiction."). And a recognition that 28 U.S.C. § 1331 provides federal subject matter jurisdiction for Property Owners' removed claims overcomes the State's demand that 42 U.S.C. § 1983 be used for that purpose.[3]

### A.     Appellees' Takings Clause claims arise directly from the Fifth Amendment to the Constitution.

The Fifth Amendment mandates the payment of just compensation when a government takes private property for public use: "nor shall private property be taken for public use, without just compensation." U.S. CONST. AMEND. V. The Takings Clause, "applicable to the States through the Fourteenth Amendment, *Chicago, B. & Q.R. Co. v. Chicago,* 166 U.S. 226 (1897), prohibits the government from taking private property for public use without just compensation." *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001).[4]

---

[3] The question of whether or not subject matter jurisdiction exists presents a different issue of whether or not the State has waived its immunity from suit and/or liability. The latter issue of the State's waiver is more fully addressed *infra*.

[4] The State's arguments to the contrary should be rejected. *See* State's Brief at 28 (citing *Barron v. City of Baltimore*, 32 U.S. 243, 250-51 (1833)). As this Court recognized in *United States v. Emerson*, 270 F.3d 203, 221, n.13 (5th Cir. 2001), *Barron* "came well before the Supreme Court began the process of incorporating certain provisions of the first eight amendments into the Due Process Clause of the Fourteenth Amendment, and as [it] ultimately rest[s] on a rationale equally applicable to all those amendments, none of them establishes any principle governing any of the issues now before us."

The constitutional protection of private property dates back to the foundation of the nation:

> The Founders recognized that the protection of private property is indispensable to the promotion of individual freedom. As John Adams tersely put it, "[p]roperty must be secured, or liberty cannot exist." This Court agrees, having noted that protection of property rights is "necessary to preserve freedom" and "empowers persons to shape and to plan their own destiny in a world where governments are always eager to do so for them."

*Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2071 (2021) (quoting <u>Discourses on Davila</u>, in 6 WORKS OF JOHN ADAMS 280 (C. Adams ed. 1851)); *Murr v. Wisconsin*, 137 S. Ct. 1933, 1943 (2017)); *see also* 2 J. Story, COMMENTARIES ON THE CONSTITUTION OF THE UNITED STATES § 1399, at 273 (5th ed. 1891) ("[N]o State government can be presumed to possess the transcendental sovereignty to take away vested rights of property."). Because the protection of private property was seen as an essential element of individual liberty, the Takings Clause was included in the Bill of Rights to protect that right "from an overreaching government." *Manning v. N.M. Energy, Minerals & Natural Resources Dep't*, 144 P.2d 87, 89-90 (N.M. 2006).

The Supreme Court explained this fundamental protection and the self-executing nature of the Takings Clause:

> [T]he right to recover just compensation for property taken by the United States for public use in the exercise of its power of eminent domain . . . was guaranteed by the Constitution. The fact that condemnation proceedings were not instituted and that the right was asserted in suits by the owners did not change the essential nature of the claim. The form of the remedy did not qualify the right. It rested upon the Fifth Amendment. Statutory recognition was not necessary. A promise to pay was not necessary. Such a promise was implied because of the duty to pay imposed

by the amendment. The suits were thus founded upon the Constitution of
the United States.

*Jacobs v. United States*, 290 U.S. 13, 16 (1933); *see also Knick v. Township of Scott, Pa.*, 139 S.
Ct. 2162, 2172 (2019) ("Once there is a taking, compensation <u>must</u> be awarded because
as soon as private property has been taken the landowner has <u>already</u> suffered a
constitutional violation. . . . In sum, because a taking without compensation violates the
<u>self-executing</u> Fifth Amendment at the time of the taking, the property owner can bring
a federal suit at that time.") (cleaned up, emphasis in original).

The State refuses to acknowledge the self-executing nature of a Takings Clause
claim, choosing instead to argue against the propriety of "creating implied causes of
action" and asserting that "federal courts do not have common-law power to create
causes of action." State's Brief at 25-27. But no "implied cause of action supposedly
created by the Fifth Amendment" is presented here. State's Brief at 11. As the Supreme
Court stated in *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, it is "[t]he text of
the Fifth Amendment itself [that] <u>requires</u> the payment of compensation whenever the
government acquires private property for a public purpose, whether the acquisition is
the result of a condemnation proceeding or a physical appropriation." 535 U.S. 302,
321 (2002) (emphasis added). The State's effort to twist the claim into something it is
not cannot overcome such plain authority from the Supreme Court.

Indeed, Texas never grapples with (let alone refutes) the seminal statement from
the Supreme Court in *First English Evangelical Lutheran Church v. Los Angeles County.*, that

the Takings Clause was designed to "secure compensation in the event of otherwise proper interference amounting to a taking. Thus, <u>government action that works a taking of property rights necessarily implicates the 'constitutional obligation to pay just compensation.</u>'" 482 U.S. 304, 315 (1987) (quoting *Armstrong v. United States*, 364 U.S. 40, 49 (1960) (emphasis added)). Based on that history, the Court held that "a landowner is entitled to bring an action in inverse condemnation as a result of 'the self-executing character of the constitutional provision with respect to compensation.'" *Id.* (quoting *United States v. Clarke,* 445 U.S. 253, 257 (1980), and 6 P. Nichols, EMINENT DOMAIN § 25.41 (3d rev. ed. 1972)). Citing Justice Brennan's dissent in *San Diego Gas & Electric Co. v. San Diego*, 450 U.S. 621 (1981), and *Jacobs*, the *First English* Court recognized that "claims for just compensation are grounded in the Constitution itself," and that "the Court has frequently repeated the view that, in the event of a taking, <u>the compensation remedy is required by the Constitution.</u>" 482 U.S. at 315-16 (emphasis added) (citing *Kirby Forest Industries, Inc. v. United States*, 467 U.S. 1, 5 (1984); *United States v. Causby*, 328 U.S. 256, 267 (1946); *Seaboard Air Line R. Co. v. United States*, 261 U.S. 299, 304-06 (1923); and *Monongahela Navigation Co. v. United States*, 148 U.S. 312, 336 (1893)).

The Supreme Court, in its well-known footnote 9, rejected the argument of the U.S. Solicitor General (which the State would endorse) that the Takings Clause "is only a limitation on the power of the Government to act" and, in response, pointed out that authority discussed in the *First English* opinion "ma[de] clear that it is the Constitution

that dictates the remedy for interference with property rights amounting to a taking."

*First English*, 482 U.S. at 316 n.9. (citing *San Diego Gas & Electric*, 450 U.S. at 655 n.21) (Brennan, J., dissenting), and *United States v. Dickinson*, 331 U.S. 745, 748 (1947)). The "self-executing character" of the Takings Clause with respect to compensation provides a firm, textual, constitutional foundation for Property Owners' claims. *Knick*, 139 S. Ct. 2171 (citing *First English*, 482 U.S. at 315 (quoting 6 P. Nichols, EMINENT DOMAIN § 25.41 (3d rev. ed. 1972)). These authorities confirm the Taking Clause's self-executing nature.

> **B.** **Appellees can pursue their Takings Clause claims through the subject matter jurisdiction provided by 28 U.S.C.§ 1331 and have no obligation to pursue those claims through section 1983.**

The State argues that the <u>only</u> means by which Appellees can bring their self-executing Takings Clause claims is under 42 U.S.C. § 1983. That is wrong.

When the State invoked section 1983 to remove this case, it acknowledged "Plaintiffs assert a federal inverse condemnation claim under the Takings clause of the Fifth Amendment to the U.S. Constitution, which invokes this Court's federal question jurisdiction." ROA.69. By that recognition, the State admitted that, because "the face of the plaintiff's well-pleaded complaint" demonstrated theirs are "civil actions arising under the Constitution," removal was proper <u>independent of section 1983</u> under the general federal question jurisdiction provided by 28 U.S.C. § 1331. *See Mosher v. City of Phoenix*, 287 U.S. 29, 32 (1932) (finding that an allegation of taking without just compensation in violation of "the asserted private right secured by the Federal

Constitution presented a substantial federal question, and that it was error of the

District Court to refuse jurisdiction").

Indeed, this Court has already rejected the State's articulation of section 1983 as

pertains to subject matter jurisdiction by holding that the subject matter jurisdiction

provided under section 1343 (which allows section 1983 claims) is <u>not</u> exclusive of

section 1331's conferral of general federal question subject matter jurisdiction:

> The state argues that 28 U.S.C. § 1343, giving federal courts jurisdiction over claims raising violations of the Constitution or of statutes providing "equal" or "civil" rights, should be considered the exclusive jurisdictional basis                                    for § 1983 actions. According to the state, § 1343 and § 1983 are companion statutes, and federal jurisdiction extends only to those § 1983 actions based on violations of the Constitution or of "equal" or "civil" rights statutes. <u>This ignores the general federal question jurisdiction granted by 28 U.S.C. § 1331 over actions arising under the laws of the United States</u>. The jurisdiction conferred by § 1343 is not exclusive, but is in addition to federal question jurisdiction.

*Tyler v. Mmes. Pasqua & Toloso*, 748 F.2d 283, 285 (5th Cir. 1984), *overruled on other grounds*,

*Victorian v. Miller*, 813 F.2d 718 (5th Cir. 1987).

Property Owners did not invoke section 1983 when they originally filed their

constitutional Takings Clause claims in the Texas state courts of general jurisdiction.

They asserted rights to just compensation under the U.S. Constitution (and the Texas

Constitution). The federal Takings Clause claims present classic federal question issues.

Neither section 1983 nor section 1343 is required for a federal court to adjudicate

Property Owners' removed federal-question claims. *See Wisconsin Dep't of Corrections v.*

*Schacht*, 524 U.S. 381, 393-94 (1998) (federal question jurisdiction is not "destroyed" by

a potential immunity defense and case may be removed to federal court). As this Court has recognized, the subject matter jurisdiction provided by section 1331 renders irrelevant the State's status as a section 1983 "non-person." *Hander v. San Jacinto Jr. Coll.*, 522 F.2d 204, 206 (5th Cir. 1975); *see also City of Kenosha v. Bruno*, 412 U.S. 507, (1973) (lack of jurisdiction under 28 U.S.C. § 1343 for section 1983 action presents a distinct from analysis of section 1331 jurisdiction). Because Property Owners' Takings Clause claims arise directly from the Constitution, section 1331 bestows a "virtually unflagging obligation" on the district court to employ the subject matter jurisdiction the State asked it to exercise. *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800, 817 (1976).[5] Simply put, section 1331 provides the federal courts with subject matter jurisdiction to address Property Owners' Takings Clause claims, so nothing compels Property Owners to rely on section 1983 (or section 1343).

    None of the cases that Texas puts forward in asserting that section 1983 is a mandatory vehicle for Appellees' inverse condemnation action compel a different

---

[5] As a matter of statutory construction, section 1983 does not encompass Property Owners' claims at all. *See Hilton v. S.C. Pub. Rys. Comm'n*, 502 U.S. 198, 205 (1991) (noting that the determination in *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989), a State is not a person within the scope of section 1983 rested on an "ordinary rule of statutory construction").

decision as regards claims under the Takings Clause against a State. Each is materially different and not applicable to this case.

- *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704 (9th Cir. 1992), did not involve a claim against a State but rather against the City of Los Angeles, to which section 1983 <u>did</u> apply.[6] Section 1983 does not apply to a state.

- *Golden Gate Hotel Ass'n v. City & County of S.F.*, 18 F.3d 1482, 1486 (9th Cir. 1994), likewise did not involve a claim against a State. And the statement concerning the obligatory nature of section 1983 was simply a reference to *Azul-Pacifico*'s determination of which statute of limitations to apply.

- *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1851 (2017), examined whether to recognize an implied cause of action against "three high executive officers in the Department of Justice and two of the wardens at the (federal) facility" for the "harsh conditions" the six alien detainee plaintiffs were subjected to while their immigration status was under review. The claims had nothing to do with takings; rather, they pertained to violations of the substantive due process component of the Fifth Amendment, the equal protection component of the Fifth Amendment, and the Fourth Amendment's bar of illegal searches via the substantive due process component of the Fifth. *Id.* at 1853-54.

- *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015), only mentions section 1983 to distinguish the Court's prior decisions in *Baliles v. Virginia Hospital Assn.*, 493 U.S. 808 (1989), and *Wilder v. Virginia Hospital Assn.*, 496

---

[6] Property Owners also note that the comment in *Azul-Pacifico* to the effect that a claimant alleging inverse condemnation "has no cause of action directly under the United States Constitution," State's Brief, at 24 (citing *Azul-Pacifico*, 973 F.2d at 705), provides no persuasive authority to this Court. The opinion is one issued on rehearing that vacated a prior decision which recognized that "[t]he Fifth Amendment is self-executing," and that "[t]he Constitution itself provides both the cause of action and the remedy." *Azul Pacifico, Inc. v. City of Los Angeles*, 948 F.2d 575, 586 (9th Cir. 1991) (citing cases). Moreover, two later decisions by the Ninth Circuit limit the weight of the *Azul-Pacifico* statement. In *Golden Gate Hotel Ass'n v. City & County of S.F.*, 18 F.3d 1482, 1486 (9th Cir. 1994), the Ninth Circuit explained that the dual opinions in *Azul-Pacifico* stemmed from the original opinion's failure to recognize the appropriate statute of limitations for actions brought under section 1983. And the Ninth Circuit, in *Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948, 954-55 (9th Cir. 2008), was even more explicit and supportive of Property Owner's position—and not the excerpt on which the State relies: "If sovereign immunity may not stand in the way of recovery in state court for unconstitutionally levied taxes because of the 'self-executing' nature of the Due Process right at stake, it follows that the state courts must also be available to adjudicate claims brought under the federal takings Clause, which is also self-executing." The Court can and should disregard the inapplicable comment in *Azul-Pacifico*.

U.S. 498 (1990), questioning whether the "Boren Amendment" to the Medicaid Act (42 U.S.C. § 1396a(a)(13)(A) (1982 ed., Supp. V)), created a private right of action. The case offers <u>nothing</u> supporting of any mandatory nature of section 1983 for a Taking Clause claim.

- *Gomez-Perez v. Potter*, 553 U.S. 474 (2008), found that the federal-sector provision of the Age Discrimination in Employment Act authorized a claim by a federal employee who is a victim of retaliation based on the filing of a complaint of age discrimination. The case lacks <u>any</u> discussion, or even citation to, section 1983, or the Takings Clause—much less any directive that section 1983 is a mandatory vehicle for the assertion of Takings Clause claims.

- *Hearth, Inc. v. Dep't of Pub. Welfare*, 617 F.2d 381 (5th Cir. 1980), was an action brought in federal court in which this Court declined to find an implied right of action arising directly from the Fourteenth Amendment and simply noted that the appellant might have chosen to use section 1983 to bring his claims. But never was section 1983 decreed mandatory.

- And, finally, *Knick* did not involve a claim against a State; rather, the claim was against a Pennsylvania Township, an entity to which section 1983 does apply. As such, it provides no support here.

## C. The illegitimate consequence of the State's section 1983 argument reflects its inherent error.

The State's strategy—removing these actions by invoking section 1983 then seeking dismissal based on the same statute it invoked—transgresses the Supreme Court's directives against the manipulation of federal removal jurisdiction to achieve an unfair tactical advantage. In *Lapides v. Board of Regents of University System of Georgia*, the Supreme Court addressed and rejected a state's attempt to use removal to gain a tactical litigation advantage: "[t]o adopt the State's . . . position would permit States to achieve unfair tactical advantages, if not in this case, in others." 535 U.S. 613, 621 (2002) (citing *Schacht*, 524 U.S. at 393-94 (Kennedy, J., concurring)); *see also Meyers ex rel. Benzing v.*

*Texas*, 410 F.3d 236, 250 (5th Cir. 2005) ("The voluntary invocation principle and the waiver-by-removal rule as explained by *Lapides* evolved not merely to quantify and compare <u>actual</u> unfair advantages but to eliminate the <u>potential</u> of unfairness by the enforcement of clear jurisdictional rules having genuine preventive effect." (emphasis in original)).

Property Owners' claims—federal and state—could have proceeded in the Texas courts. *See Haywood v. Drown*, 556 U.S. 729, 735 (2009) ("state courts as well as federal courts are entrusted with providing a forum for the vindication of federal rights"); *Alden v. Maine*, 527 U.S. 706, 754-55 (1999) ("The constitutional privilege of a State to assert its sovereign immunity in its own courts does not confer upon the State a concomitant right to disregard the Constitution or valid federal law."); *DLX, Inc. v. Kentucky*, 381 F.3d 511, 527 (6th Cir. 2004) (noting "had DLX brought a federal claim with its state claim in state court, the Kentucky courts would have had to hear that federal claim"); *Manning*, 144 P.2d at 91-98 (providing an extensive analysis and concluding that "the Takings Clause creates a cause of action against a state which is actionable in state court and to which the state may not assert immunity"). The State had no section 1983 "defense" to assert in the original forum. Having removed these cases, the State seeks to advance an inapplicable statutory it could not assert in Texas state court.

The Takings Clause provides a self-executing claim for just compensation that is actionable in federal court pursuant to 28 U.S.C. § 1331. From a jurisdictional perspective, nothing more is required for Property Owners' claims to proceed in federal

court. The State's section 1983 argument not only lacks <u>any</u> authoritative support but also constitutes the use of removal "to achieve unfair tactical advantages" denounced in *Lapides*. 535 U.S. at 621. This Court should affirm the decision below and reject the State's assertion that Property Owners' claims <u>must</u> be brought under section 1983.

### D.    The State's limitations defense was rejected correctly.

Section 1983 also serves as the basis for the State's affirmative defense that "Plaintiffs' claims arising from flooding during Hurricane Harvey are barred by limitations." State's Brief at 29. With the rejection of the State's section 1983 argument, the State's limitations challenge fails.

Moreover, the State goes outside the section 1983 limitations jurisprudence to invoke the Texas law limitations period for claims seeking compensation for <u>damage</u> to property under the <u>state</u> constitution. *See* State's Brief at 32-34. But that case law has no relevance to Appellees' federal takings claims. Property Owners make no claim for "damages" under the Takings Clause; they seek the just compensation mandated for property rights taken by the State.

In addition, Congress has already spoken to the proper limitations period for an inverse condemnation claim under the Fifth Amendment: it is six years. *See* 28 U.S.C. § 2501 (providing limitations period for claims under the Fifth Amendment against the United States). Should this Court not apply the congressionally determined period (because it only explicitly applies to claims against the United States), the alternative choice would "the most closely analogous statute of limitations under state law." *See*

*Reed v. United Transp. Union*, 488 U.S. 319, 323-24 (1989) (discussing rule of borrowing the "most closely analogous" state limitations period). And the limitations period applicable to a claim seeking compensation for a taking under Article I section 17 (as opposed to damages) is ten years. *See Edwards Aquifer Auth. v. Bragg*, 421 S.W.3d 118, 134 (Tex. App.—San Antonio 2013, pet. denied) ("Texas courts agree . . . that a plaintiff's cause of action for inverse condemnation is barred after the expiration of the ten-year period of limitations to acquire land by adverse possession, which is found in Texas Civil Practice and Remedies Code section 16.026."). Under any appropriate choice, the State's limitations argument fails.

Independently, the State's limitations argument fails because the State has never demonstrated, as a matter of law, the date Property Owners' claims accrued. While the State assumes that Property Owners' federal takings claims accrued on the date they were flooded during Harvey, that is not necessarily accurate. The date Takings Clause claims accrue is a question of federal law and it is <u>not</u> necessarily pegged to the first flood. *See Dickinson*, 331 U.S. at 748-49 (inverse condemnation claim alleging taking of flowage easement by flooding does not automatically accrue upon the initial flooding of the private property); *Banks v. FDIC*, 374 F. App'x 532, 535 (5th Cir. 2010) (unpublished) (date federal claim accrues is governed by federal law). The failure by the State to establish the date Property Owners' claims accrued independently dooms its limitations argument.

## II.    The State Is Not Immune From Liability For Appellees' Fifth Amendment Takings Claims.

In *Meyers*, this Court held "that state sovereign immunity consists of two separate and different kinds of immunity, immunity from suit and immunity from liability." 410 F.3d at 254-55. And, addressing that dual immunity inquiry, the *Meyers* Court "conclude[d] that the Constitution permits and protects a state's right to relinquish its immunity from suit while retaining its immunity from liability, or vice versa, but that it does not require a state to do so." *Id.* at 255.

The State seeks a ruling that a federal court may not exercise the federal question jurisdiction granted by Congress that Texas voluntarily invoked when it removed Appellees' claims from the state courts in which they were originally filed. But the State enjoys no immunity from Property Owners' Takings Clause claims. Property Owners recognize that the State may "treat its immunity from liability as separate from its immunity from suit for purposes of waiver or relinquishment." *Id.* By removing, the State consented to the exercise of the federal court's jurisdiction (i.e., waived the State's immunity from suit).[7] But, before removing, the State had waived its immunity from liability as to Takings Clause claims both from the State's consent to the plan of the Convention (i.e., the structure of the Constitution itself), and, independently, under substantive Texas state law. As such, the State lacked any immunity from liability in

---

[7] Fifth Circuit law provides that removal serves to waive a State's immunity from suit. *Meyers*, 410 F.3d at 255. The State concurs that it has waived that immunity by removal. *See* State's Brief, at 17.

either the state courts where the Takings Clause claims were originally filed <u>or</u> the federal court whose jurisdiction the State invoked.

### A.     By Joining the Union, The State Waived Its Immunity from Liability as to Takings Clause Claims.

By joining the Union, the State subjected itself to the U.S. Constitution. And the protections afforded to all citizens under the U.S. Constitution cannot be abridged by the State, whether under the auspices of sovereign immunity or otherwise:

> The constitutional privilege of a State to assert its sovereign immunity in its own courts does not confer upon the State a concomitant right to disregard the Constitution or valid federal law. <u>The States and their officers are bound by obligations imposed by the Constitution and by federal statutes that comport with the constitutional design</u>. We are unwilling to assume the States will refuse to honor the Constitution or obey the binding laws of the United States. The good faith of the States thus provides an important assurance that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land." U.S. Const., Art. VI.

*Alden*, 527 U.S. at 754-55 (emphasis added). And a state's adherence to the U.S. Constitution becomes all the more mandatory when a self-executing right such as the Takings Clause becomes implicated. *See SDDS, Inc. v. State*, 2002 S.D. 90, ¶ 20, 650 N.W.2d 1, 8 ("The Fifth Amendment in general and the takings clause in particular are integral parts of the Constitution, and they are made applicable to the states through the Fourteenth Amendment.") (citing *Dolan v. City of Tigard*, 512 U.S. 374, 383-84 (1994)); *see also Manning*, 144 P.2d at 91-98 (analysis concluding sovereign immunity does not bar Fifth Amendment takings claims brought against a state in state court).

Like all states, Texas agreed to honor and subjugate itself to the U.S.

Constitution—and the Takings Clause—as part of its entry into the Union:

> [The State] cannot be viewed as a single, unconnected, sovereign power, on whose legislature no other restrictions are imposed than may be found in its own constitution. She is a part of a large empire; <u>she is a member of the American union; and that union has a constitution the supremacy of which all acknowledge, and which imposes limits to the legislatures of the several states, which none claim a right to pass.</u>

*Fletcher v. Peck*, 6 Cranch 87, 136 (1810) (emphasis added); *see also id.* at 138 (concluding

that "the constitution of the United States contains what may be deemed a bill of rights

for the people of each state").

The State cannot avoid the supremacy of the U.S. Constitution by arguing that

the Fifth Amendment did not apply to the States in 1876 when Texas adopted its

current constitution is irrelevant. *See* State's Brief at 21-22. Texas may not choose which

obligations of the federal constitution apply to it because doing so would run afoul of

"the plan of the Convention"—the "waiver of sovereign immunity to which all States

implicitly consented at the founding." *PennEast Pipeline Co., LLC v. New Jersey*, 141 S. Ct.

2244, 2258-59 (2021) (quoting *Alden*, 527 U.S. at 728-29, 755-56). The State's position

also wholly ignores the Supremacy Clause. *See Howlett v. Rose*, 496 U.S. 356, 371 (1990)

("An excuse that is inconsistent with or violates federal law is not a valid excuse: The

Supremacy Clause forbids state courts to dissociate themselves from federal law

because of disagreement with its content or a refusal to recognize the superior authority

of its source."). Moreover, the State's argument incorrectly imports the standard

regarding "constructive waivers" (which require some form of statement by the State), with that of a "waiver effected by litigation conduct." *Lapides*, 535 U.S. at 620. The "relevant clarity" necessary to find consent "must focus on the litigation act the State takes that creates the waiver. And that act—removal—is clear." *Id.*

More generally, there is no absolute bar to a federal court entering a judgment requiring the payment of money damages by a State. *See, e.g.*, *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976) (holding that federal courts could award money damages—"a damages award payable to a private party from the state treasury"—in an action under Title VII); *see also Hutto v. Finney*, 437 U.S. 678, 690 (1978) ("Many of the court's most effective enforcement weapons involve financial penalties."); *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 240 (1969) ("The rule of damages, whether drawn from federal or state sources, is a federal rule responsive to the need whenever a federal right is impaired."); *Gary W. v. State of La.*, 622 F.2d 804, 807 (5th Cir. 1980) (noting "an order directing the responsible state official to satisfy the judgment out of state funds is the only reasonable way to ensure compliance with a valid federal judgment"); *see also Clark v. Barnard*, 108 U.S. 436, 448 (1883) (holding that "the voluntary appearance of the state in intervening as a claimant of the fund in court [meant the state] became an actor as well as defendant, as by its intervention the proceeding became one in the nature of an interpleader, in which it became necessary to adjudicate the adverse rights of the state and the appellees to the fund, to which both claimed title").

Likewise, the constitutional mandate that just compensation be paid for the physical taking of private property for public use is beyond dispute:

> When the government physically acquires private property for a public use, the Takings Clause imposes a clear and categorical obligation to provide the owner with just compensation. The government commits a physical taking when it uses its power of eminent domain to formally condemn property. The same is true when the government physically takes possession of property without acquiring title to it. And the government likewise effects a physical taking when it occupies property— say, by recurring flooding as a result of building a dam. These sorts of physical appropriations constitute the "clearest sort of taking," and we assess them using a simple, *per se* rule: The government must pay for what it takes.

*Cedar Point Nursery*, 141 S. Ct. at 2071; *see also Dickinson*, 331 U.S. at 750 ("[F]or all that the Government takes it must pay").

These precedents rightly charge the State with knowledge that, by removing these cases and accepting federal jurisdiction over all claims presented, the State would face adjudication on the merits of the specific liability it now seeks to evade. *See Lapides*, 535 U.S. at 624 (reasoning a state "bind[s itself] it to the jurisdiction of the federal court (for Eleventh Amendment purposes) by the consent to removal"). Following *Alden* and *Lapides*, this Court should hold that, by removing Property Owners' self-effecting constitutional claims, the state consented to those claims being fully and finally adjudicated by the federal court whose jurisdiction the State invoked. *See Lapides*, 535 U.S. at 624 (noting litigation consequences are matters to be evaluated by the State when deciding whether to remove); *see also Bd. of Regents of Univ. of Wisconsin Sys. v. Phoenix Int'l Software, Inc.*, 653 F.3d 448, 464 (7th Cir. 2011) ("Just as Georgia in *Lapides* had the

option of litigating in its home court rather than removing to federal court, Wisconsin here enjoyed a number of options, and each one carried a different implication for sovereign immunity.").[8]

## B.    Texas Law Confirms that The State Waived Immunity from Liability for Takings Clause Claims.

Separate from the "waiver of sovereign immunity to which all States implicitly consented at the founding" *PennEast Pipeline*, 141 S. Ct. at 2258-59, a state may waive immunity from liability by its own state law. Should this Court not find that the State waived immunity from liability for Property Owners' Takings Clause claims by joining the Union, an analysis of Texas state law demonstrates that the State has waived any immunity from liability for Takings Cause claims as a function of state law.

"Whether Texas has retained a separate immunity from liability is an issue that must be decided according to that state's law." *Meyers*, 410 F.3d at 255. And, while the State asserts that it has not waived immunity from liability because the Texas Constitution "says nothing about the Fifth Amendment," State's Brief at 21, that is not the inquiry. No "magic words" waive immunity. *FAA v. Cooper,* 132 S. Ct. 1441, 1448 (2012). The State need not specifically name or designate the federal statutory (or constitutional) provision to which it has "chosen" to waive liability. The question is

---

[8] While the Fifth Circuit has held that the Fifth Amendment does not automatically waive sovereign immunity, *see Sammons v. United States*, 860 F.3d 296, 300 (5th Cir. 2017) (citing *Ware v. United States*, 626 F.2d 1278 (5th Cir. 1980)), that holding was made with regard to the United States itself. It does not concern the "waiver of sovereign immunity to which all States implicitly consented at the founding." *PennEast Pipeline*, 141 S. Ct. at 2258-59.

whether the State has waived its immunity for the acts or omissions which give rise to that liability. *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 593-94 (5th Cir. 2006) (rejecting similar assertion that "waiver of sovereign immunity must be expressly granted by statutory provision" because the Mississippi Tort Claims Act had waived immunity "for tortious acts or omissions which give rise to civil liability).[9]

An examination of Texas state law demonstrates the State has waived its immunity from liability for <u>all takings claims</u>. When discussing the waiver of immunity provided by Article I, section 17 of the Texas Constitution, the Texas Supreme Court has repeatedly discussed that waiver in terms that do not limit it <u>only</u> to claims under

---

[9] Just as this Court reasoned in *Black*, Texas distinguishes constitutional violations from ordinary torts. *C.M. v. Tomball Reg'l Hosp.*, 961 S.W.2d 236, 243 (Tex. App.—Houston [1st Dist.] 1997, no writ) ("Section 1983 imposes liability for violations of rights protected by the United States Constitution, not for violations of duties of care arising out of tort law.") (citing *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 447 (5th Cir. 1994)). As in *Black*, it is well established that Texas courts share concurrent subject matter jurisdiction with federal courts in the enforcement of federally created rights. *See Mills v. Warner Lambert Co.*, 157 S.W.3d 424, 427 (Tex. 2005) (discussing concurrent jurisdiction and stating that even preemption of state law claim "does not mean that the trial court lacked jurisdiction over the claim"); *Stiles v. Mem'l Hermann Healthcare Sys.*, 213 S.W.3d 521, 528 (Tex. App.—Beaumont 2007, pet. denied) ("[E]ven if Memorial is correct that ERISA preempts Stiles' state law claims, it does not necessarily follow that the trial court lacked jurisdiction over the claims. Federal preemption is distinguished from exclusive federal jurisdiction, because, '[i]n the former, federal substantive law supplants state law but absent other provisions both state and federal courts have concurrent jurisdiction of actions arising under that law; in the latter, only the specified federal instrumentalities have jurisdiction of the matter, irrespective of the law to be applied.'" (citation omitted)). And as the *Black* Court recognized, when Texas courts enforce federally created rights, they must follow the federal interpretations of those rights. *Black*, 461 F.3d at 593 (confirming that "states cannot disregard the Constitution or valid federal law under the guise of the Eleventh Amendment") (citing *Alden*, 527 U.S. at 754-55); *see also Union Pac. R. Co. v. Williams*, 85 S.W.3d 162, 170 (Tex. 2002) ("State courts trying FELA claims must apply federal law about burdens of proof.") (citing *Dice v. Akron, Canton, & Youngstown R.R. Co.*, 342 U.S. 359, 361 (1952) ("[O]nly if federal law controls can the federal act be given that uniform application throughout the country essential to effectuate its purposes.")).

the state constitution. *See City of Dallas v. Stewart*, 361 S.W.3d 562, 568 (Tex. 2012) (noting that takings claim is one for which immunity does not provide a shield against liability); *Steele v. City of Houston*, 603 S.W.2d 786, 791 (Tex. 1980) ("The Constitution itself is the authorization for compensation for the destruction of property and is a waiver of governmental immunity for the taking, damaging or destruction of property for public use."); *Sw. Bell Tel., L.P. v. Harris Cty. Toll Rd. Auth.*, 282 S.W.3d 59, 61 (Tex. 2009) ("Governmental immunity does not shield the State from an action for compensation under the takings clause.").

Outside this litigation, the State has acknowledged readily that it enjoys no immunity from liability for federal Takings Clause claims in the state courts where Property Owners originally filed their claims. *See Gutersloh v. Texas*, 25 F.3d 1044 (5th Cir. 1994) (observing that the State of Texas, through its Attorney General, admitted that "the courts of the State of Texas are open to inverse condemnation damage claims against state agencies on the basis of the Fifth Amendment, as applied to the states through the Fourteenth Amendment, as well as on the basis of the Texas Constitution and laws"); *Texas Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 390, 392 (Tex. 2011) (discussing the just compensation requirement of both the Texas and federal constitutions and recognizing sovereign immunity "does not shield the State from claims based on unconstitutional takings of property"); *Koch v. Texas Gen. Land Office*, 273 S.W.3d 451, 457 (Tex. App.—Austin 2008, pet. denied) (noting the Texas General Land Office "does not dispute that it has no sovereign immunity against a takings claim

under the federal or state constitution"); *see also Bowden v. State*, 502 S.W.3d 913 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (takings claims under both the state and federal constitutions addressed independently with no assertion by State of immunity from liability).[10] By enacting a waiver of sovereign immunity for takings claims against it when brought in a Texas state court, the State has waived its immunity from liability for analogous claims brought in federal court. *See Black*, 461 F.3d at 595 ("Although the [Mississippi Tort Claims Act] does not explicitly waive immunity for federal causes of action, its acknowledgment and coverage of liabilities outside the MTCA effectively waives immunity."); *see also Blasland, Bouck & Lee, Inc. v. City of N. Miami*, No. 971484, 2001 WL 736006, at *3 (S.D. Fla. Feb. 7, 2001) (finding sovereign immunity did not bar award of costs and fees by federal court where state law allowed similar award against state agencies).

Nor should immunity from liability under the *sui generis* Takings Clause be resolved differently in a state versus a federal court. As the Supreme Court has stated, having "a State's liability or immunity, as the case may be, the same in both federal and state courts," promotes important considerations of symmetry. *Hilton v. South Carolina*

---

[10] The State's waiver of sovereign immunity for claims under the U.S. Constitution in the Texas Private Real Property Rights Preservation Act also demonstrates the State's understanding of the coterminous nature of liability under the different provisions. *See* TEX. GOV'T CODE § 2007.002(5) (defining a "taking" as "a governmental action that affects private real property, in whole or in part or temporarily or permanently, in a manner that requires the governmental entity to compensate the private real property owner as provided by the Fifth and Fourteenth Amendments to the United States Constitution or Section 17 or 19, Article I, Texas Constitution"); *see also id.* § 2007.003(a)(2) (waiver applies to action that "imposes a physical invasion" of private real property).

*Pub. Rys. Comm'n*, 502 U.S. 198, 206 (1991). A state can always remove a case asserting a claim for compensation under the Takings Clause. Allowing removal to impose a new barrier to adjudication of that claim would permit the State to engineer the forbidden Catch-22 "tactical advantage" and thereby create the "inconsistency and unfairness" denounced in *Lapides*, 535 U.S. at 623.

As before, none of the cases cited by the State compel a different determination. Each concerns a question of whether the State had waived its immunity <u>from suit</u>. But immunity from suit is not at issue here; that immunity has been waived by the State's removal to the federal courts.

- *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318 (5th Cir. 2002), dealt only with immunity from suit and did not address immunity from liability. *See id.* at 332 ("The Texas Labor Code, however, does not contain a clear and unequivocal waiver of immunity from suit with respect to the ADA, a distinct federal statute.").

- *Martinez v. Texas Dep't of Crim. Justice*, 300 F.3d 567 (5th Cir. 2002), also dealt only with immunity from suit as opposed to the question of immunity from liability. *See id.* at 575 ("As she did in district court, Martinez maintains that the Texas Whistleblower Act's waiver of state sovereign immunity in Texas state court operates to waive Eleventh Amendment immunity in federal court. Even when a State consents to suit in its own courts, however, it may retain Eleventh Amendment immunity from suit in federal court."); *see also id.* ("Neither section [of the Texas Whistleblower Act] evidences any intent by Texas to waive its Eleventh Amendment immunity and subject itself to suit in federal courts.").

- *Texas Dep't of Trans. v. Sefzik*, 355 S.W.3d 618, 620 (Tex. 2011), held that sovereign immunity applied to declaratory judgment actions "unless the Legislature has waived immunity for the particular claims at issue." In direct contrast to the State's assertion, the State's quote does <u>not</u> direct that Texas's sovereign immunity depends on the name or source of the claim; rather, it confirms that the essence of the relief sought is determinative.

- *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89 (1984), concerned an action originally brought in federal court and addressed the issue of immunity from suit, not liability. Indeed, the sentence anchoring the footnote quoted by the State reads "A State's constitutional interest in immunity encompasses not merely <u>whether</u> it may be sued, but <u>where</u> it may be sued." *Id.* at 99 (emphasis in original). *Pennhurst* simply does not say, as the State asserts, that immunity from liability must be waived as to "the particular claims at issue."

- *Harris County Hosp. Dist. v. Tomball Regional Hosp.*, 283 S.W.3d 838, 844 (2009), determined "that Article IX, section 4 of the Texas Constitution does not waive a district's governmental immunity <u>from suit</u>." (emphasis added). Indeed, the opinion expressly declared that the constitutional provision "adopted did not address waiver of a hospital district's immunity" whatsoever. *Id.* Finally, the only discussion as to how "explicit" in nature a waiver must be is irrelevant to this case as well; it concerns TEX. GOV'T CODE § 311.034 and its requirement that a waiver <u>by statute</u> enacted by the state legislature must be in "clear and unambiguous language." Nothing about the constitutional waiver contained in Article I section 17 of the Texas Constitution appears anywhere in the opinion.

- *Sossamon v. Texas*, 563 U.S. 277 (2011), examined the standard for finding a waiver of immunity by the United States Congress when it passed a statute of general application; in particular, that case considered the Religious Land Use and Institutionalized Persons Act of 2000. But it offers no guidance on the issues in this case which do not involve a congressional waiver of immunity from liability.

- *Edelman v. Jordan*, 415 U.S. 651 (1974), likewise considered the standard for finding a waiver of immunity by the United States Congress. The *Edelman* court found that a State's participation in a program was not sufficient to establish consent on the part of the State <u>to be sued</u> in the federal courts.

Finally, the recent decision in *Canada Hockey LLC v. Texas A&M Univ. Athletic Dep't*, No. 20-20503, 2022 WL 445172 (5th Cir. Feb. 14, 2022), provides no support for the State's immunity from liability because the case involved only immunity from suit. The State acknowledges as much. *See* State's Brief at 12 ("To be sure, that case involved immunity from suit; the plaintiff had sued a state agency in federal court."). Beyond that

disconnect, *Canada Hockey* analyzed whether the state court forum was sufficiently

"unavailable" that the State could be sued in federal court under the Due Process Clause

of the Fourteenth Amendment. 2022 WL 445172, at *9. That inquiry turns on a whole

separate analysis that does not touch on the issues in this case.

> Nevertheless, the State urges a reading of *Canada Hockey* that goes further:
>
> [T]he *Canada Hockey* district court's logic extends to immunity from suit as much as it extends to immunity from liability. Texas precedent treats the Texas Constitution's Takings Clause as a waiver of both immunity from suit and immunity from liability. *See Steele*, 603 S.W.2d at 791. If Texas law treating it as a waiver of immunity from liability means it waives that immunity under the Fifth Amendment, it would just as much waive immunity from suit under the Fifth Amendment. That cannot be.

State's Brief at 22.

But the single citation the State provides, *Steele v. City of Houston*, 603 S.W.2d 786,

791 (Tex. 1980), supports Property Owners' position that Texas precedent treats the

state constitutional provision as waiving both immunity from suit and immunity from

liability. Nor does the *Steele* opinion limit that dual waiver to only cases brought under

the state constitution. Instead, *Steele* held that the Texas Constitution "itself is the

authorization for compensation for the destruction of property and is <u>a waiver of

governmental immunity for the taking, damaging or destruction of property for public

use</u>." *Id.* (emphasis added). The State's suggestion that the Texas Supreme Court in *Steele*

limited the basis for the State's takings liability to only the waiver in the Texas

Constitution is belied by the opinion's discussion of the historic origin of takings liability itself:

> Uncompensated governmental taking of property was unlawful before Magna Carta. Section 8 of that document restated the rule that goods could not be taken without reasonable compensation. Governmental damaging of property without compensation was more recently proscribed. The Thirteenth Declaration of Rights of the Constitution of the Republic of Texas provided that "No person's particular service shall be demanded, nor property taken or applied to public use, unless by the consent of himself or his representative, without just compensation being made therefor according to law." The Texas Constitution of 1845 also confined the duty to compensate to the taking of property. Article I, Section 14, provided, "No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts shall be made, and no person's property shall be taken or applied to public use, without adequate compensation being made, unless by the consent of such person." The Constitutions of 1861, 1866 and 1869 had a similar provision. The governmental duty to compensate for damaging and destroying a citizen's property first appeared in the Constitution of 1876.

*Steele*, 603 S.W.2d 789-90 (citations omitted). Even the State's best case demonstrates the breadth of the waiver resulting from the Texas Constitution and the idea, more specifically, that the waiver is of immunity from liability. By the explicit terms of Article I, section 17 of its Constitution of 1876, Texas waived its immunity from both suit and liability for the taking of private property for public use without compensation. The State cannot avoid its waiver as applied to Takings Clause claims.

## **CONCLUSION**

Appellees request the district court's decision be affirmed.

Dated: May 27, 2022.                  Respectfully submitted,

*/s/ Daniel H. Charest*

Daniel H. Charest
E. Lawrence Vincent
BURNS CHAREST LLP
900 Jackson Street, Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
dcharest@burnscharest.com
lvincent@burnscharest.com

Charles Irvine
IRVINE & CONNER PLLC
4709 Austin Street
Houston, Texas 77004
Telephone: (713) 553-1704
charles@irvineconner.com

Counsel for Plaintiffs-Appellees

## CERTIFICATE OF SERVICE

On May 13, 2022, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Malwarebytes and is free of viruses.

*/s/ Daniel H. Charest*

Daniel H. Charest

## CERTIFICATE OF COMPLIANCE

The foregoing complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 10,443 words, excluding the parts exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Garamond) using Microsoft Word (the same program used to calculate the word count).

*/s/ Daniel H. Charest*

Daniel H. Charest