No. 21-40750

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

Richard Devillier; Wendy Devillier;
Steven Devillier; Rhonda Devillier; et al.,
*Plaintiffs-Appellees*,

*v.*

State of Texas,
*Defendant-Appellant.*

On Appeal from the United States District Court
for the Southern District of Texas
Galveston Division

### PLAINTIFFS-APPELLEES' PETITION FOR
### REHEARING EN BANC
### CORRECTED

Daniel H. Charest
E. Lawrence Vincent
BURNS CHAREST LLP
900 Jackson Street, Suite 500
Dallas, Texas 75202
469-904-4550
dcharest@burnscharest.com
lvincent@burnscharest.com

Charles Irvine
IRVINE & CONNER PLLC
4709 Austin Street
Houston, Texas 77004
713-533-1704
charles@irvineconner.com

Counsel for Plaintiffs-Appellees

# CERTIFICATE OF INTERESTED PERSONS

## No. 21-40750, *Devillier, et al. v. State of Texas*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5TH CIR. R. 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**Plaintiffs/Appellees:**

Richard & Wendy Devillier; Steven & Rhonda Devillier; David & Angela McBride; Bert Hargraves; Barney & Crystal Threadgill; Barbara Devillier; David Ray; Gary Herman; Rhonda Glanzer; Chris & Darla Barrow; Dennis Dugat; Laurence Barron; Deanette Lemon; Jill White; Beverly Kiker; Yale Devillier, Individually and as Personal Representative of the Estate of Kyle H. Devillier; Charles Monroe; Jacob & Angela Fregia; Jerry & Mary Devillier; Zalphia Hankamer; Larry Bollich; Susan Bollich; Sheila Marino; William Meissner; Taylor McBride; Brian & Kathleen Abshier; Jina Daigle; Coulon Devillier; Halley Ray Sr., Halley Ray Jr. & Sheila Moor; John Rhame; Alex & Tammy Hargraves; William Devillier; Kyle & Allison Wagstaff; Kevin Sonnier; Eugenia Molthen; Bradley Moon; John Roberts; Marilyn Roberts; Savanna Sanders; Robert & Tracey Brown; Josh Baker; Lee Blue; Russell Brown; Margaret Carroll; Kevin Cormier; James & Melissa Davis; Maria Gallegos & Christopher Ferguson; Angela Hughes; Robert Laird; Harold Ledoux; Kacey Sandefur; Tifani Staner; Stephen Stelly; Randall & Patti Stout; Chris Day; Calvin Hill; Michael & Julie Weisse; Eleanor Leonard; Ivy Hamm Claude Roberts; Bryan Olson; Caren Nueman; Floyd Cline, Jr.; Kenneth Coleman; Haylea Barrow; Carol Roberts; Jenica Vidrine; Charles Collier; Sharon Crissey; James Brad Crone; Heather & James Coggin; Clovis Melancon; Leroy Speights; Crossroads Asphalt Preservation, Inc.; Fesi Energy, LLC; Brian Fischer; Curtis Laird; Devon Boudreaux; Richard Belsey; Sharon Clubb; Janet Dancer; Porter May; Cindy Perez; Cecile Jimenez; Scott Hamric; Bruce & Tina Hinds; William Olivier; Esteban Lopez; Billy Stanley; Candace Abshier; Sean Fillyaw; Autumn Minton; Brandon Sanders; Rodney Badon; Charlie Carter; Myra Wellons; Jerry Stepan; Bryan Mills; Cat 5 Resources LLC; Joan Jeffrey; Randy & Monica Brazil; Herbert & Kerry Dillard; Southeast Texas Olive, LLC; and Gulf Coast Olive Investments, LLC.

**Appellees' counsel:**
Daniel Henry Charest
E. Lawrence Vincent
Burns Charest LLP
900 Jackson Street, Ste 500
Dallas, Texas 75202

Charles W Irvine
Irvine & Conner PLLC
4709 Austin Street
Houston, Texas 77004

Lawrence G Dunbar
Dunbar Law Firm, PLLC
13121 Louetta Road, #1240
Cypress, Texas 77429

**Defendant/Appellant:**
The State of Texas

**Appellant's counsel:**
Ken Paxton
Brent Webster
Judd E. Stone II
Benjamin D. Wilson
Natalie D. Thompson
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548

/s/ *Daniel H. Charest*
Daniel H. Charest
Counsel for Plaintiffs-Appellees

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ................................................................ii

TABLE OF CONTENTS ..............................................................................................iv

TABLE OF AUTHORITIES .........................................................................................v

STATEMENT OF THE ISSUES ...................................................................................1

RULE 35(b)(1) STATEMENT .....................................................................................1

COURSE OF PROCEEDINGS AND CASE DISPOSITION ...................................2

STATEMENT OF FACTS .............................................................................................2

ARGUMENTS AND AUTHORITIES ........................................................................4

      I.     The Panel Opinion Conflicts with Controlling Authority.........................4

      II.    The Panel Opinion Involves Questions of Exceptional
           Importance.................................................................................................. 10

CONCLUSION ........................................................................................................... 13

CERTIFICATE OF SERVICE..................................................................................... 14

CERTIFICATE OF COMPLIANCE.......................................................................... 14

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Allen v. Cooper*,
  206 L. Ed. 2d 291, 140 S. Ct. 994 (2020) .........................................................7

*Azul–Pacifico, Inc. v. City of Los Angeles*,
  973 F.2d 704 (9th Cir. 1992) ............................................................... 4, 5, 6

*Bivens v. Six Unknown Fed. Narcotics Agents*,
  403 U.S. 388 (1971) ........................................................................................5

*Cedar Point Nursery v. Hassid*,
  141 S. Ct. 2063 (2021) .................................................................................. 11

*City of Baytown v. Schrock*,
  645 S.W.3d 174 (Tex. 2022) ..........................................................................8

*City of Kenosha v. Bruno*,
  412 U.S. 507 (1973) ........................................................................................7

*Colorado River Water Cons. Dist. v. United States*,
  424 U.S. 800 (1976) ........................................................................................9

*First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*,
  482 U.S. 304 (1987) ........................................................................................5

*Golden Gate Hotel Ass'n v. City & County of S.F.*,
  18 F.3d 1482 (9th Cir. 1994) ..........................................................................6

*Gutersloh v. Texas*,
  25 F.3d 1044 WL 261047 (5th Cir. 1994) .......................................................8

*Hander v. San Jacinto Jr. Coll.*,
  522 F.2d 204 (5th Cir. 1975) ..........................................................................7

*Hernandez v. Mesa*,
  140 S. Ct. 735 (2020) .................................................................................. 4, 5

*Hilton v. South Carolina Pub. Rys. Comm'n*,
  502 U.S. 198 (1991) ........................................................................................7

*Horne v. Dep't of Agric.*,
  576 U.S. 350 (2015) ...................................................................................... 11

*Howlett by and through Howlett v. Rose*,
  496 U.S. 356 (1990) ...................................................................................... 12

*Jacobs v. United States*,
  290 U.S. 13 (1933) ..................................................................................... 5, 6

*Knick v. Township of Scott,*
    139 S. Ct. 2162 (2019) ............................................................................passim

*Lapides v. Bd. of Regents of Univ. Sys. of Georgia,*
    535 U.S. 613 (2002) ..................................................................................... 12

*Meyers ex rel. Benzing v. Texas,*
    410 F.3d 236 (5th Cir. 2005) ...............................................................passim

*Mosher v. City of Phoenix,*
    287 U.S. 29 (1932) ..........................................................................................9

*PennEast Pipeline Co., LLC v. New Jersey,*
    141 S. Ct. 2244 (2021) ............................................................................... 7, 8

*Pickett v. Texas Tech Univ. Health Scis. Ctr.,*
    37 F.4th 1013 (5th Cir. 2022) ...................................................................... 10

*San Diego Gas & Elec. Co. v. San Diego,*
    450 U.S. 621 (1981) ........................................................................................5

*SDDS, Inc.,*
    225 F.3d 970 (8th Cir. 2000) ..........................................................................8

*Seminole Tribe of Fla. v. Florida,*
    517 U.S. 44 (1996) ..........................................................................................7

*Seven Up Pete Venture v. Schweitzer,*
    523 F.3d 948 (9th Cir. 2008) ..........................................................................6

*Sportscare of Am., P.C. v. Multiplan, Inc.,*
    No. 2:10-CV-04414, 2013 WL 1661018 (D.N.J. Apr. 17, 2013) ................ 10

*Torres v. Texas Department of Public Safety,*
    142 S. Ct. 2455 (2022) ....................................................................................8

*Tyler v. Mmes. Pasqua & Toloso,*
    748 F.2d 283 (5th Cir. 1984) ..........................................................................7

*Victorian v. Miller,*
    813 F.2d 718 (5th Cir. 1987) ..........................................................................7

*Virginia Off. for Prot. & Advoc. v. Stewart,*
    563 U.S. 247 (2011) ........................................................................................7

*Will v. Mich. Dep't of State Police,*
    491 U.S. 58 (1989) ..........................................................................................7

*Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City,*
    473 U.S. 172 (1985) ........................................................................................9

*Zwickler v. Koota,*
    389 U.S. 241 (1967) ................................................................................................ 11, 12

## Statutes

28 U.S.C. § 1292 ............................................................................................................... 2

28 U.S.C. § 1343 ............................................................................................................... 7

28 U.S.C. § 1441 ............................................................................................................. 10

## Other Authorities

The Federalist No. 81, p. 487 (C. Rossiter ed. 1961) (A. Hamilton) ............................... 7

## STATEMENT OF THE ISSUES

1. Whether the panel's holding that "the Fifth Amendment Takings Clause as applied to the states through the Fourteenth Amendment does not provide a right of action against a state" conflicts with decisions of both the Supreme Court in *Knick* and this Court in *Meyers*.

2. Whether the panel's holding that a federal court may <u>never</u> adjudicate direct claims for just compensation under the Takings Clause of the Fifth Amendment against a State even when the State itself chose the forum is incorrect.

## RULE 35(B)(1) STATEMENT

The panel opinion held that sovereign immunity precluded federal question jurisdiction for Appellees' Fifth Amendment Takings Clause claims against the State of Texas <u>despite</u> the State's waiver of immunity from suit (which the State acknowledges) by its removal of a state-court action to federal court. En banc consideration is necessary to secure or maintain uniformity of this Court's decisions because the panel decision conflicts with decisions of both the United States Supreme Court, including *Knick v. Township of Scott, Pa.*, 139 S. Ct. 2162 (2019), and this Court, including *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236 (5th Cir. 2005), *reh'g denied with opinion*, 454 F.3d 503 (5th Cir. 2006).

The panel decision also involves questions of exceptional importance: whether a State is immune from liability to pay just compensation under the Fifth Amendment, and whether the federal judiciary can (or will) protect the Fifth Amendment's guarantee

of just compensation for the taking of property rights held by every citizen of this country. The panel ruled that federal courts lack jurisdiction to enforce the constitutional right to just compensation against a State—even after the State invoked that very jurisdiction by removing the action to federal court.

## COURSE OF PROCEEDINGS AND CASE DISPOSITION

Appellees, Plaintiffs below, filed four lawsuits in Texas state district courts asserting, *inter alia,* inverse condemnation claims for just compensation against the State under both article I, section 17 of the Texas State Constitution and the Takings Clause of the Fifth Amendment to the United States Constitution. The State removed the cases, which were consolidated before the Hon. Jeffrey V. Brown of the Southern District of Texas. The State filed a motion for judgment on the pleadings that was rejected in a Memorandum and Recommendation by Magistrate Judge Andrew Edison. Judge Brown adopted the Magistrate's ruling "in its entirety as the holding of the court," and certified his order for interlocutory review pursuant to 28 U.S.C. § 1292, which this Court granted. Notably, the interlocutory appeal addressed some, but not all, of the federal claims below. Despite the existence of additional federal claims below, the panel opinion vacated the district court's decision for want of jurisdiction and instructed the case be remanded to state court.

## STATEMENT OF FACTS

Appellees/plaintiffs own property on the north side of Interstate Highway 10 ("IH-10") in Chambers, Jefferson, and Liberty Counties, Texas. After being flooded

twice, plaintiffs filed separate lawsuits in Texas courts alleging that their "properties were inundated, taken, destroyed, and/or damaged by the State of Texas by its design, construction, operation, and/or maintenance of IH-10." ROA.1271. In those state court actions, Appellees asserted claims against the State pertaining to inverse condemnation based on not only article I, section 17 of the Texas State Constitution but also the Takings Clause of the Fifth Amendment to the United States Constitution. ROA.1, ROA.1909, ROA.2280, ROA.2723.

After the State removed these cases, they were consolidated. ROA.1127. Appellees filed their First Amended Master Complaint. ROA.1164. The State moved for judgment on the pleadings on the Fifth Amendment claims. ROA.1199. The Hon. Jeffrey V. Brown adopted the Magistrate's summary of the allegations: "[t]o facilitate the use of IH-10's eastbound lanes as an evacuation route during periods of flooding, the Texas Department of Transportation recently raised the elevation of IH-10, widened it from four to six lanes, and installed a 32-inch impenetrable, solid concrete traffic barrier on the highway's centerline." ROA.1274. "This barrier, abnormal for its elimination of the ordinary ground level drainage slots, effectively created a dam protecting the southside of the freeway from flooding by barricading all rainfall on the northside. Rainfall that would otherwise run overtop the roadway and continue downstream towards the Gulf of Mexico instead stopped at the barrier and caused backwater flooding onto Plaintiffs' properties on the northside of the barrier." ROA.1274.

3

## **ARGUMENTS AND AUTHORITIES**

The panel's entire 135-word <u>published</u> opinion follows:

The State of Texas appeals the district court's decision that Plaintiffs' federal Taking Clause claims against the State may proceed in federal court. Because we hold that the Fifth Amendment Takings Clause as applied to the states through the Fourteenth Amendment does not provide a right of action for takings claims against a state, we VACATE the district court's decision for want of jurisdiction and REMAND with instructions to return this case to the state courts. The Supreme Court of Texas recognizes takings claims under the federal and state constitutions, with differing remedies and constraints turning on the character and nature of the taking; nothing in this description of Texas law is intended to replace its role as the sole determinant of Texas state law. As such, this Court lacks jurisdiction to review these claims.

En banc correction is necessary to avoid perpetuating jurisprudence at odds with controlling authority from both the United States Supreme Court and this Court. Independently, en banc review is necessary to address questions of exceptional importance regarding the protection of private property rights as enshrined in the United States Constitution.

## I.     **The Panel Opinion Conflicts with Controlling Authority.**

In ruling the federal Takings Clause does not provide a right of action for claims against a state the panel cited two inapposite cases: *Hernandez v. Mesa*, 140 S. Ct. 735 (2020), and *Azul–Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704 (9th Cir. 1992). Neither case supports the panel opinion, which itself conflicts with decisions of both the Supreme Court and this Court – most prominently *Knick v. Township of Scott*, 139 S. Ct.

2162 (2019), and *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236 (5th Cir. 2005), *reh'g denied with opinion*, 454 F.3d 503 (5th Cir. 2006).

The *Hernandez* decision declined to recognize an implied federal common law claim (as was done in *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971)) for circumstances involving cross-border shootings. But the question of whether there exists an "implied" federal common law claim is wholly inapposite to this matter. Appellees' claim arises directly from "the self-executing Fifth Amendment." *Knick v. Township of Scott*, 139 S. Ct. 2162, 2172 (2019) ("[B]ecause a taking without compensation violates the self-executing Fifth Amendment at the time of the taking, the property owner can bring a federal suit at that time."). *Knick*'s discussion of *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304 (1987), *Jacobs v. United States*, 290 U.S. 13 (1933), and Justice Brennan's dissent in *San Diego Gas & Elec. Co. v. San Diego*, 450 U.S. 621 (1981), leaves no room for analysis of the instant claim as one "implied" ala' *Bivens. See Knick*, 139 S. Ct. at 2171 ("[T]he owner's claim for compensation 'rests upon the Fifth Amendment'.") (quoting *Jacobs*, 290 U.S. at 16); *id.* at 2172 (affirming that it is the Constitution itself—"of its own force"—that furnishes "a basis for a court to award money damages against the government") (citing *First English*, 482 U.S. at 316, n.9). The panel ignored this foundational issue.

The only other proffered basis for the panel's decision is the 1992 opinion in *Azul-Pacifico*, in which the Ninth Circuit held that a plaintiff had "no cause of action directly under the United States Constitution." 973 F.3d at 705. But that statement

cannot have survived *Knick*'s affirmation (from 2019) that the Takings Clause claim is

<u>self-executing</u>, 139 S. Ct. at 2171, and that a plaintiff's right to full compensation "arises

at the time of the taking" and "rests upon the Fifth Amendment," 139 S. Ct. at 2170.

Indeed, *Knick*'s discussion of *Jacobs* leaves no room for reliance on the Ninth

Circuit's discredited ruling in *Azul-Pacifico*,[1] and runs directly counter to the panel's

finding of no jurisdiction:

> <u>The [Fifth Amendment takings] suits were based on the right to recover just compensation for property taken by the United States for public use in the exercise of its power of eminent domain. That right was guaranteed by the Constitution</u>. The fact that condemnation proceedings were not instituted and that the right was asserted in suits by the owners did not change the essential nature of the claim. The form of the remedy did not qualify the right. <u>It rested upon the Fifth Amendment. **Statutory recognition was not necessary**</u>. A promise to pay was not necessary. Such a promise was implied because of the duty to pay imposed by the amendment. **<u>The suits were thus founded upon the Constitution of the United States</u>**

*Jacobs*, 290 U.S. at 16 (emphasis added). Nor does the panel's statement that the Takings

Clause applies to the states via the Fourteenth Amendment make any difference. As

*Knick* confirmed, the *Jacobs* principle "applies to takings by the State." 139 S. Ct. at 2171.[2]

---

[1] As the Ninth Circuit has acknowledged, the *Azul-Pacifico* panel flip-flopped on this issue, and that Court has since rejected the precept upon which the panel relies. *See Azul Pacifico, Inc. v. City of Los Angeles*, 948 F.2d 575, 586 (9th Cir. 1991) (initial opinion recognizing that "[t]he Fifth Amendment is self-executing," and that "[t]he Constitution itself provides both the cause of action and the remedy"); *Golden Gate Hotel Ass'n v. City & County of S.F.*, 18 F.3d 1482, 1486 (9th Cir. 1994) (explaining that the dual opinions in *Azul-Pacifico* stemmed from the original opinion's failure to apply the appropriate statute of limitations for actions brought under section 1983.); *Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948, 954-55 (9th Cir. 2008) (explicitly noting that the federal Takings Clause is self-executing).

[2] *Azul-Pacifico*'s citation to 42 U.S.C. § 1983 is further evidence of its inapplicability to the instant case. The *Azul-Pacifico* plaintiff sued the City of Los Angeles, a claim within the ambit of Section 1983. But <u>as a matter of statutory construction</u>, Section 1983 does not apply to plaintiffs' claims. *See Hilton v.*

The panel determination that no federal claim based directly on, and arising from, the Takings Clause of the Fifth Amendment to the Constitution exists must be corrected.

That the claim lies against the State of Texas changes nothing. On this score, the panel decision stands in direct conflict with this Court's opinions in *Meyers* that, by removing these cases <u>on four separate occasions</u>, Texas voluntarily waived any "unqualified right to object peremptorily to the federal district court's jurisdiction on the ground of state sovereign immunity." 454 F.3d at 504;[3] *see also PennEast Pipeline Co., LLC v. New Jersey*, 141 S. Ct. 2244, 2262 (2021) (noting that when—as here—"a State waives its immunity and consents to suit in federal court, the Eleventh Amendment does not bar the action"); *Meyers*, 410 F.3d at 255 ("[W]hen Texas removed this case to federal court it voluntarily invoked the jurisdiction of the federal courts and waived its immunity from suit in federal court.").

---

*S.C. Pub. Rys. Comm'n*, 502 U.S. 198, 205 (1991) (noting that the determination in *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989), a State is not a person within the scope of section 1983 rested on an "ordinary rule of statutory construction"). The statute provides neither a right of action nor is it jurisdictional. And as seen, *infra*, the jurisdictional analysis triggered by 28 U.S.C. § 1343 for section 1983 actions is separate and distinct from that regarding jurisdiction under 28 U.S.C. § 1331. *City of Kenosha v. Bruno*, 412 U.S. 507 (1973); *see also Tyler v. Mmes. Pasqua & Toloso*, 748 F.2d 283, 285 (5th Cir. 1984) (federal question jurisdiction under 28 U.S.C. § 1331 exists independent from the jurisdiction for section 1983 claims), *overruled on other grounds Victorian v. Miller*, 813 F.2d 718 (5th Cir. 1987); *Hander v. San Jacinto Jr. Coll.*, 522 F.2d 204, 206 n.4 (5th Cir. 1975) (the subject matter jurisdiction provided by section 1331 eliminates any need for analysis of section 1983's applicability).

[3] The "unqualified right to object peremptorily" to federal jurisdiction based on sovereign immunity recognized in *Meyers* arises from the "indignity" to a State from "being haled into [federal] court without its consent," *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 258 (2011); *see also Allen v. Cooper*, 206 L. Ed. 2d 291, 140 S. Ct. 994, 1000 (2020) (noting it is in "the nature of sovereignty not to be amenable to a suit" absent consent) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 n.13 (1996), quoting The Federalist No. 81, p. 487 (C. Rossiter ed. 1961) (A. Hamilton)).

Nor does the second aspect of sovereign immunity enjoyed by the State—immunity from liability—implicate <u>jurisdiction</u>; it is an affirmative defense which <u>also</u> may be waived (through some function aside from removal). *Meyers*, 454 F.3d at 504 ("In sum, Texas may assert its state sovereign immunity as defined by its own law <u>as a defense</u> against the plaintiffs' claims in the federal courts, <u>but it may not use it to defeat federal jurisdiction or as a return ticket back to the state court system</u>."); *see also Wisconsin Dep't of Corrections v. Schacht*, 524 U.S. 381, 389 (1998) ("The Eleventh Amendment . . . does not automatically destroy original jurisdiction. Rather, the Eleventh Amendment grants the State a legal power to assert a sovereign immunity defense should it choose to do so. The State can waive the defense."); *In re SDDS, Inc.*, 225 F.3d 970, 972 (8th Cir. 2000) ("[W]hile the Eleventh Amendment provides the State with a defense, it does not automatically deprive the federal courts of original jurisdiction.") (citing *Schacht*).

Removal addresses a state's immunity from suit. Amenability to liability in its own courts,[4] as well as the plan of the Convention,[5] addresses a state's immunity from

---

[4] *See* Opinion at 2 & n.2; *City of Baytown v. Schrock*, 645 S.W.3d 174, 176 (Tex. 2022) (noting that both the Texas and federal constitutions "require the government to compensate property owners when it takes their property for public use. This constitutional right waives the government's immunity from lawsuits—immunity that otherwise often insulates the public treasury from claims for damages."); *Gutersloh v. Texas*, 25 F.3d 1044, 1994 WL 261047, *1 (5th Cir. 1994) (unpublished but cited by the panel) (noting that the State "admits the courts of the State of Texas are open to inverse condemnation damage claims <u>against state agencies on the basis of the Fifth Amendment</u>, as applied to the states through the Fourteenth Amendment, <u>as well as</u> on the basis of the Texas Constitution and laws") (emphasis added).

[5] *See Torres v. Texas Department of Public Safety*, 142 S. Ct. 2455 (2022) (via the plan of the Convention, Texas waived immunity from liability for money damages for a claim under the Uniformed Services Employment and Reemployment Rights Act of 1994); *PennEast Pipeline Company, LLC v. New Jersey*, 141 S. Ct. 2244, 2255 (2021) (holding that even though when "the Constitution and Bill of Rights were

liability. On this record, no <u>jurisdictional</u> bar exists to the federal court' adjudication of plaintiffs' self-executing Takings Clause which the State removed to federal court.[6] *Mosher v. City of Phoenix*, 287 U.S. 29, 32 (1932) (holding Fifth Amendment claim "presented a substantial federal question, and that it was error of the District Court to refuse jurisdiction"). The panel opinion evades the "virtually unflagging obligation" to exercise the section 1331 jurisdiction it holds regarding plaintiffs' constitutional claims. *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800, 817 (1976).

Finally, even if the panel declines to alter its ruling on plaintiffs' Takings Clause claims,[7] its decision must be modified to simply reverse and remand the case since plaintiffs' complaint presents <u>other</u> federal questions which were not, and cannot, be dismissed via this interlocutory appeal. Counts 3 and 4 of plaintiffs' Amended Master Complaint allege procedural and substantive due process claims under the Fourteenth Amendment, which independently support federal question jurisdiction for this case.

---

ratified, they did not include the words eminent domain," the plan of the Convention effected waiver by New Jersey of immunity from federal eminent domain power since "the Takings clause of the Fifth Amendment … recognized the existence of such a power").

[6] The panel's observation that Texas state courts <u>can</u> adjudicate Takings Clause claims does not mean they <u>must</u> be litigated there—especially on this record where the State of Texas <u>removed</u> the claims to federal court thereby waiving its immunity from suit in this forum. By requiring Takings Clause claims against a State be adjudicated in a state court, the panel opinion—like the rejected doctrine of *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985)— "relegates the Takings Clause to the status of a poor relation among the provisions of the Bill of Rights [by] handing authority over federal takings claims to state courts." *Knick*, 139 S. Ct. at 2169.

[7] The State has advised that it will seek rehearing since the panel reached a jurisdictional determination neither party sought or concede. And while subject matter jurisdiction cannot be conferred by agreement, both sides believe that plaintiffs' federal claims in Counts 3 and 4 of plaintiffs' complaint provide jurisdiction under section 1331, precluding remand of the action *in toto*.

*See* ROA.1193-95; *Sportscare of Am., P.C. v. Multiplan, Inc.*, No. 2:10-CV-04414, 2013 WL 1661018, at *13 (D.N.J. Apr. 17, 2013) ("It is black letter law that a case is properly removed to federal court if there is <u>a single federal question</u> present in the complaint.") (emphasis in original, citing 28 U.S.C. § 1441; 28 U.S.C. § 1331). The panel's instruction to remand the entire case overlooks the partial aspect of the interlocutory appeal. Because there was no challenge to plaintiffs federal due process claims raised below, and no question of their validity is addressed or implicated by the order as to which review was granted, the panel had no jurisdiction to *sua sponte* dismiss plaintiffs' remaining federal claims which independently provide federal question jurisdiction and preclude any order of remand of the action to state court. *Pickett v. Texas Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1019 (5th Cir. 2022).

## II.   The Panel Opinion Involves Questions of Exceptional Importance.

By finding a lack of jurisdiction and ordering the cases back to state court, the panel opinion side-stepped a question of exceptional constitutional importance: Will the federal courts safeguard a citizen's constitutional right to just compensation for the taking of private property by a state when it is the state itself who chose that forum to adjudicate the claim? The panel answered no.

The protection of private property, and the role of the Takings Clause in that effort, cannot be seriously questioned. Only last year, the U.S. Supreme Court underscored (again) the importance of the rights in question:

> The Founders recognized that the protection of private property is indispensable to the promotion of individual freedom. As John Adams tersely put it, "property must be secured, or liberty cannot exist." This Court agrees, having noted that protection of property rights is "necessary to preserve freedom" and "empowers persons to shape and to plan their own destiny in a world where governments are always eager to do so for them."

*Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2071 (2021) (cleaned up, citations omitted);

*see also Horne v. Dep't of Agric.*, 576 U.S. 350, 358-59 (2015) (tracing foundation of Takings Clause protection of private property from Magna Carta and pre-constitutional state legislative enactments, and the recognition of their prominence by the founding fathers and early Supreme Court opinions).

Nor should the role of the federal judiciary in safeguarding that right be so trivially dismissed. As explained in *Zwickler v. Koota*, 389 U.S. 241, 246 (1967), reliance on state courts to vindicate essential constitution rights "was completely altered after the Civil War" with the creation of federal question jurisdiction by which Congress "gave the federal courts the vast range of power which had lain dormant in the Constitution since 1789" and "imposed the duty upon all levels of the federal judiciary to give due respect to a suitor's choice of a federal forum for the hearing and decision of his federal constitutional claims." *Id.* at 247-48. In this case, the suitor asking for that federal adjudication of its sovereign immunity defense is the State of Texas. And, while the panel confirmed that "[t]he Supreme Court of Texas recognizes takings claims under the federal and state constitutions," it left to the Texas courts the job to address both the state and federal claims. The panel's consignment of that federal determination

to a Texas court with the remote possibility of eventual review by the U.S. Supreme Court is directly contrary to the duty it holds. *Id.* at 248 ("Plainly, escape from that duty is not permissible merely because state courts also have the solemn responsibility, equally with the federal courts, to guard, enforce, and protect every right granted or secured by the constitution of the United States." (citations omitted, cleaned up)).

Ultimately, questions whether (a) the State has waived its affirmative defense to liability for a federal Takings Clause claim by accepting a similar liability under state law,[8] and/or (b) the State has waived its defense to liability through the plan of the Convention, and the ultimate issue of (c) the power of a federal court to enter a judgment awarding a monetary remedy to be paid from the State's fisc, <u>each</u> invokes a question to be decided pursuant to federal law and involves significant issues of constitutional federalism. *See Meyers*, 410 F.3d at 246-47 (5th Cir. 2005) (holding that "the question of whether a particular form of state action amounts to waiver is a federal question that should be decided under a federal rule") (citing *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 623 (2002)); *see also Zwickler*, 389 U.S. at 251-52 (jurisdiction cannot be shirked "simply to give state courts the first opportunity to vindicate [a] federal claim," and that "the recognition of the role of state courts as the

---

[8] *See Howlett by and through Howlett v. Rose*, 496 U.S. 356, 375 (1990) (Florida court's refusal to adjudicate federal claim "when the court entertains similar state-law actions against state defendants, violates the Supremacy Clause").

final expositors of state law implies no disregard for the primacy of the federal judiciary in deciding questions of federal law").

## <u>CONCLUSION</u>

En banc review should be granted to confirm that a federal court determines these exceptionally important issues of federal law.[9]

Dated: December 13, 2022.

Respectfully submitted,

*/s/ Daniel H. Charest*

Daniel H. Charest
E. Lawrence Vincent
BURNS CHAREST LLP
900 Jackson Street, Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
dcharest@burnscharest.com
lvincent@burnscharest.com

Charles Irvine
IRVINE & CONNER PLLC
4709 Austin Street
Houston, Texas 77004
Telephone: (713) 553-1704
charles@irvineconner.com

Counsel for Plaintiffs-Appellees

---

[9] While Plaintiffs agree with the panel's statement that the Texas state court will permit a federal takings claim, the State takes the position that it can <u>never</u> be held responsible for a Takings Clause claim in <u>any</u> court. *See* Reply Brief for Appellant at 13 ("The State's assertion of immunity from liability does not depend on whether the case is heard in federal court or state court. Rather, the State can invoke the same immunity from liability in federal court that it could have invoked in State court.").

## CERTIFICATE OF SERVICE

On December 13, 2022, this corrected brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Malwarebytes and is free of viruses.

*/s/ Daniel H. Charest*
Daniel H. Charest

## CERTIFICATE OF COMPLIANCE

The foregoing complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 3,893 word, excluding the parts exempted by Rule 32(f); and complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) as it has been prepared in a proportionally spaced typeface (14-point Garamond) using Microsoft Word (the same program used to calculate the word count).

*/s/ Daniel H. Charest*
Daniel H. Charest

# United States Court of Appeals
## for the Fifth Circuit

---

United States Court of Appeals
Fifth Circuit

**FILED**

November 23, 2022

Lyle W. Cayce
Clerk

No. 21-40750

---

RICHARD DEVILLIER; WENDY DEVILLIER; STEVEN DEVILLIER;
RHONDA DEVILLIER; BARBARA DEVILLIER; ET AL,

*Plaintiffs—Appellees*,

*versus*

STATE OF TEXAS,

*Defendant—Appellant*.

---

Appeal from the United States District Court
for the Southern District of Texas
No. 3:20-CV-223

---

Before HIGGINBOTHAM, SOUTHWICK, and HIGGINSON, *Circuit Judges*.

PER CURIAM:

The State of Texas appeals the district court's decision that Plaintiffs' federal Taking Clause claims against the State may proceed in federal court. Because we hold that the Fifth Amendment Takings Clause as applied to the states through the Fourteenth Amendment does not provide a right of action

for takings claims against a state,[1] we VACATE the district court's decision for want of jurisdiction and REMAND with instructions to return this case to the state courts. The Supreme Court of Texas recognizes takings claims under the federal and state constitutions,[2] with differing remedies and constraints turning on the character and nature of the taking;[3] nothing in this description of Texas law is intended to replace its role as the sole determinant of Texas state law.[4] As such, this Court lacks jurisdiction to review these claims.[5]

---

[1] *See Hernandez v. Mesa*, 140 S. Ct. 735, 742 (2020) ("[A] federal court's authority to recognize a damages remedy must rest at bottom on a statute enacted by Congress."); *Azul–Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992) (holding that a takings plaintiff has "no cause of action directly under the United States Constitution"), *cert. denied*, 506 U.S. 1081 (1993).

[2] *See City of Baytown v. Schrock*, 645 S.W.3d 174, 178 (Tex. 2022) ("Under our [federal and state] constitutions, waiver occurs when the government refuses to acknowledge its intentional taking of private property for public use. A suit based on this waiver is known as an 'inverse condemnation' claim."); *see also Gutersloh v. Texas*, No. 93-8729, 25 F.3d 1044, 994 WL 261047, *1 (5th Cir. 1994) (unpublished per curiam) ("[The State] . . . admits, the courts of the State of Texas are open to inverse condemnation damage claims against state agencies on the basis of the Fifth Amendment, as applied to the states through the Fourteenth Amendment, as well as on the basis of the Texas Constitution and laws.").

[3] *See Allodial Ltd. P'ship v. N. Tex. Tollway Auth.*, 176 S.W.3d 680, 683–84 (Tex. App.—Dallas 2005, pet. denied) (noting that Texas courts apply a two-year limitations period to takings claims for "damaged" property and a ten-year limitations period to takings claims for "taken" property).

[4] *See, e.g.*, *San Jacinto River Auth. v. Medina*, 627 S.W.3d 618, 623 (Tex. 2021), *reh'g denied* (Sept. 3, 2021) ("[T]he owner of private property may bring a common-law action for inverse condemnation.").

[5] *Mitchell v. Advanced HCS, L.L.C.*, 28 F.4th 580, 588 (5th Cir. 2022) (noting that federal-question jurisdiction will lie over state-law claims only if "resolving a federal issue is necessary to resolution of the state-law claim" (quoting *Lamar Co., L.L.C. v. Miss. Transp. Comm'n*, 976 F.3d 524, 529 (5th Cir. 2020))).