No. 21-40750

# In the United States Court of Appeals for the Fifth Circuit

RICHARD DEVILLIER; WENDY DEVILLIER; STEVEN DEVILLIER;
RHONDA DEVILLIER; BARBARA DEVILLIER; ET AL,

*Plaintiffs-Appellees*,

*v.*

STATE OF TEXAS,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Southern District of Texas, Galveston Division

## DEFENDANT-APPELLANT THE STATE OF TEXAS'S RESPONSE TO PLAINTIFFS-APPELLEES' PETITION FOR REHEARING EN BANC

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

JUDD E. STONE II
Solicitor General

BENJAMIN D. WILSON
Deputy Solicitor General

NATALIE D. THOMPSON
Assistant Solicitor General
Natalie.Thompson@oag.texas.gov

Counsel for the State of Texas

## CERTIFICATE OF INTERESTED PERSONS

No. 21-40750

RICHARD DEVILLIER; WENDY DEVILLIER; STEVEN DEVILLIER;
RHONDA DEVILLIER; BARBARA DEVILLIER; ET AL.,

*Plaintiffs-Appellees,*

*v.*

STATE OF TEXAS,

*Defendant-Appellant.*

Under the fourth sentence of Fifth Circuit Rule 28.2.1, appellant, as a governmental party, need not furnish a certificate of interested persons.

/s/ Natalie D. Thompson
NATALIE D. THOMPSON
*Counsel of Record for*
*Defendant-Appellant*

# TABLE OF CONTENTS

Page

Certificate of Interested Persons ................................................................ i

Table of Authorities ................................................................................. iii

Introduction ............................................................................................. 1

Issues Presented ...................................................................................... 3

Statement of Facts and Course of Proceedings ......................................... 3

Reasons to Deny the Petition .................................................................... 5

    I.   The Panel Correctly Held That There is No Cause of Action
        Directly Under the Fifth Amendment. ............................................ 5

    II.  Ruling for Plaintiffs on the Cause of Action Question Would
        Require the Court to Reach Other Unresolved Issues. ..................... 10

        A.  Plaintiffs' claims should be dismissed based on the State's
            sovereign immunity from liability. ......................................... 10

        B.  Any Fifth Amendment takings claim should be subject to a
            two-year statute of limitations. ............................................. 13

Conclusion ............................................................................................. 14

Certificate of Service ............................................................................. 15

Certificate of Compliance ...................................................................... 15

# Table of Authorities

Page(s)

**Cases:**

*Alden v. Maine,*
527 U.S. 706 (1999) .......................................................................... 12

*Alexander v. Sandoval,*
532 U.S. 275 (2001)............................................................................ 6

*Azul Pacifico, Inc. v. City of Los Angeles,*
948 F.2d 575 (9th Cir. 1991), *reh'g granted, opinion withdrawn*, 973
F.2d 704 (9th Cir. 1992).................................................................7, 8, 9

*Azul-Pacifico, Inc. v. City of L.A.,*
973 F.2d 704 (9th Cir. 1992) ........................................................1, 7, 8

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,*
403 U.S. 388 (1971) .................................................................. 2, 3, 6, 13

*Blatchford v. Native Vill. of Noatak and Circle Vill.,*
501 U.S. 775 (1991) .......................................................................... 12

*Brown v. Nationsbank Corp.,*
188 F.3d 579 (5th Cir. 1999) .............................................................13

*Chicago, B. & Q.R. Co. v. City of Chicago,*
166 U.S. 226 (1897) ............................................................................ 1

*City of Baytown v. Schrock,*
645 S.W.3d 174 (Tex. 2022) ............................................................. 12

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.,*
526 U.S. 687 (1999) ...........................................................................11

*DelCostello v. Int'l Bhd. of Teamsters,*
462 U.S. 151 (1983) ...........................................................................13

*Egbert v. Boule,*
142 S. Ct. 1793 (2022) ........................................................................ 7

*First English Evangelical Lutheran Church of Glendale v. Los Angeles
County,*
482 U.S. 304 (1987) ........................................................................ 8, 9

*Gahagan v. U. S. Citizenship & Immigration Servs.,*
911 F.3d 298 (5th Cir. 2018)........................................................... 7–8

*Hernandez v. Mesa,*
140 S. Ct. 735 (2020) ....................................................................1, 5, 6

*Jacobs v. United States*,
290 U.S. 13 (1933) ........................................................... 9

*Johnson v. Ry. Express Agency, Inc.*,
421 U.S. 454 (1975) ........................................................ 13

*Knick v. Township of Scott*,
139 S. Ct. 2162 (2019) ............................................... 6, 7, 9

*Lombardo v. Pa., Dep't of Pub. Welfare*,
540 F.3d 190 (3d Cir. 2008) .................................... 10–11

*Meyers ex rel. Benzing v. Texas*,
410 F.3d 236 (5th Cir. 2005) ...................................... 10

*PennEast Pipeline Co., LLC v. New Jersey*,
141 S. Ct. 2244 (2021) ................................................ 12

*Reata Constr. Corp. v. City of Dall.*,
197 S.W.3d 371 (Tex. 2006) ........................................ 11

*Redgrave v. Ducey*,
953 F.3d 1123 (9th Cir. 2020) ..................................... 11

*San Diego Gas & Electric Co. v. City of San Diego*,
450 U.S. 621 (1981). 948 F.2d ...................................... 9

*Stroud v. McIntosh*,
722 F.3d 1294 (11th Cir. 2013) ................................... 10

*Trant v. Oklahoma*,
754 F.3d 1158 (10th Cir. 2014) ................................... 10

*Will v. Mich. Dep't of State Police*,
491 U.S. 58 (1989) ..................................................... 6-7

**Constitutional Provisions:**
U.S. Const.:
art. VI ........................................................................... 6
amend. IV ..................................................................... 6
amend. V ............................................................... *passim*
amend. XIV ................................................... 1, 3, 4, 5, 12
Tex. Const. art. I, § 17 .................................................. 3

28 U.S.C.
  § 1292(b) ........................................................................................... 4
  § 2401(a) ...........................................................................................13
  § 2501...............................................................................................13
42 U.S.C.:
  § 1983............................................................................................. *passim*

**Other Authorities:**

Black's Law Dictionary (11th ed. 2019) .................................................... 6

# Introduction

Plaintiffs sued the State of Texas for a taking under the Fifth Amendment. The State does not dispute that the Fifth Amendment's just-compensation requirement applies to the States through the Fourteenth Amendment. *See Chicago, B. & Q.R. Co. v. City of Chicago*, 166 U.S. 226, 238 (1897). But that does not mean plaintiffs have a cause of action to sue for damages. Rather, "a federal court's authority to recognize a damages remedy [against a State] must rest at bottom on a statute enacted by Congress." *Hernandez v. Mesa*, 140 S. Ct. 735, 742 (2020). Because no statute allows plaintiffs to seek damages from the State for a taking, plaintiffs argued they could sue directly under the Fifth Amendment.

Agreeing with the State, the panel correctly rejected that argument. Slip Op. 1–2. Its holding is supported by well-established precedent and accords with the only court of appeals decision to have directly confronted the same question. *See Azul-Pacifico, Inc. v. City of L.A.*, 973 F.2d 704, 705 (9th Cir. 1992).

Because the lack of a cause of action is not a jurisdictional defect, the panel should have ordered the district court to dismiss plaintiffs' Fifth Amendment claims with prejudice rather than for want of jurisdiction. State's PFREB at 6–8. And Plaintiffs' federal due-process claims, which were not at issue in this permissive interlocutory appeal, independently supply federal-question jurisdiction. *Id.* at 8–9. But the en banc Court need not (and should not) revisit the panel's correct conclusion that plaintiffs lack a cause of action under the Fifth Amendment.

Moreover, Texas's sovereign immunity from liability independently requires dismissal of plaintiffs' Fifth Amendment claims. Even though the Fourteenth

Amendment was not held to incorporate the Fifth Amendment's takings clause against the States until 1897, the district court held that the Texas Constitution of 1876 waives the State's immunity from liability for such claims. That was wrong—as is plaintiffs' similarly anachronistic theory that the States waived their immunity in the plan of the Convention. So even if plaintiffs had a cause of action, their claims should be dismissed because the State has invoked sovereign immunity from liability.

Moreover, even if the Court were to disagree with *both* the State's alternative bases for dismissal, it would be called on to address the proper statute of limitations. The district court erroneously borrowed a six-year limitations period for takings claims against the United States or a ten-year limitations period for a different type of takings claim under the Texas Constitution. Instead, plaintiffs' claims should be subject to the same two-year limitations period that federal courts borrow for claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and 42 U.S.C. section 1983.

### Issues Presented

1. Whether the panel correctly held that the Fifth Amendment takings clause as applied to the States through the Fourteenth Amendment does not provide a right of action against a State, even if it incorrectly concluded this deprived the Court of jurisdiction.

2. Whether plaintiffs' claims under the Fifth Amendment takings clause are:

   A. Barred by the State's sovereign immunity from liability for monetary damages; and

   B. Subject to the two-year statute of limitations applicable to *Bivens* actions, section 1983 suits, and analogous takings claims under the Texas Constitution.

## Statement of Facts and Course of Proceedings

Plaintiffs-Appellees own property north of Interstate Highway 10 in east Texas. ROA.1167-68, 1176–77. Plaintiffs allege that during Hurricane Harvey and Tropical Storm Imelda, a concrete barrier that divides the east- and west-bound traffic on IH-10 acted as a dam, preventing flood waters from moving onto the southern lanes of IH-10. ROA.1170–73. Thus, they allege, flood waters backed up north of the highway, resulting in "impoundment of rainwater runoff on Plaintiffs' property for days[.]" ROA.1174. They allege the water damaged their real and personal property. ROA.1174–75.

Seeking to represent a class of similarly situated property owners, plaintiffs sued the State of Texas under the Fifth Amendment and the Texas Constitution's Takings Clause. ROA.1165–66; *see* U.S. Const. amend. V; Tex. Const. art. I, § 17. The first lawsuit was filed in state court on May 27, 2020. ROA.74–96. The State removed the case to the Southern District of Texas based on federal-question

jurisdiction, ROA.68–96, where it was consolidated with three other lawsuits alleging the same claims. ROA.1127–29; *see also* ROA.1940–74, ROA.2286–2391, ROA.2733–2839. After consolidation, plaintiffs filed an amended complaint adding procedural and substantive due process claims. ROA.1193–96.

The State moved for judgment on the pleadings as to, *inter alia*, plaintiffs' Fifth Amendment takings claims. ROA.1199–1219. The State argued, first, that plaintiffs lack a cause of action to sue States for a taking under the Fifth Amendment Takings Clause as incorporated through the Fourteenth Amendment. ROA.1204–06. Second, although Texas agrees that removal waived its sovereign immunity from suit in federal court, the State argued it retains immunity *from liability* for money damages. ROA.1206–07. Finally, the State argued that even if plaintiffs could overcome these two obstacles, the claims arising from flooding during Tropical Storm Harvey (in August 2017) are barred by the two-year statute of limitations borrowed from Texas law for analogous claims. ROA.1206.

The district court denied the State's motion, ROA.1271–91, ROA.1379–80, but certified the order for interlocutory appeal pursuant to 28 U.S.C. section 1292(b), ROA.1380. This Court granted permission to appeal the interlocutory order. 28 U.S.C. § 1292(b); Order (No. 21-90043) (Oct. 8, 2021).

After briefing and argument, the panel agreed with the State that "the Fifth Amendment Takings Clause as applied to the states through the Fourteenth Amendment does not provide a right of action for takings claims against a state." Slip Op. 1–2. Because it concluded plaintiffs' claims fail for lack of a cause of action, the panel did not reach the State's alternative arguments that Texas's sovereign

immunity from liability independently bars plaintiffs' Fifth Amendment claims, *see* Appellant's Br. at 7–13; Reply at 3–13, or that the claims based on Hurricane Harvey were untimely, *see* Appellant's Br. at 19–24; Reply at 21–23.

Plaintiffs filed a petition for rehearing en banc on December 7, 2022, asking the Court to revisit the panel's holding that there is no implied cause of action under the Fifth Amendment and, in any event, to recognize there is federal jurisdiction over their suit. The State filed a petition for rehearing en banc on December 21, arguing that although the panel's resolution of the merits was correct, it erred in treating the lack of a cause of action as a jurisdictional defect and in ordering the district court to remand the case to state court. The Court directed the parties to respond to the respective petitions.

## Reasons to Deny the Petition

### I.  The Panel Correctly Held That There is No Cause of Action Directly Under the Fifth Amendment.

The panel held (Slip Op. 1–2) "that the Fifth Amendment Takings Clause as applied to the states through the Fourteenth Amendment does not provide a right of action for takings claims against a state." Although the panel erred in holding that this lack of a cause of action deprived the Court of jurisdiction, its antecedent legal conclusion is correct.

**A.** Plaintiffs first criticize the panel (at 4) for citing *Hernandez*. Slip Op. 2 n.1. That criticism is unwarranted. Plaintiffs do not dispute that *Hernandez* is one of many decisions recognizing that "a federal court's authority to recognize a damages remedy must rest at bottom on a statute enacted by Congress." 140 S. Ct. at 742;

*e.g.*, *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). And plaintiffs have not identified any statute granting them a cause of action for damages against a State. Instead, they argue they can sue directly under the Constitution. The panel correctly rejected that theory.

Plaintiffs insist (at 5) that they are not arguing for an "'implied' federal common law claim" because the Supreme Court has described the Fifth Amendment's takings clause as "self-executing." But to call the clause "self-executing" is to state that the takings clause is positive law of its own force. *See* "Self-Executing," Black's Law Dictionary (11th ed. 2019) (defining a "self-executing" instrument as one that is "effective immediately without the need of any type of implementing action."). "Self-executing" does not mean that there is automatically a private cause of action for damages if the clause is violated. After all, the Supremacy Clause is self-executing on courts, but it does not create a cause of action. *Alexander*, 532 U.S. at 286. The Fourth Amendment applies of its own force to federal officials, but someone complaining his Fourth Amendment rights have been violated still cannot sue for damages unless his claim fits within the narrow parameters of recognized *Bivens* actions. *See, e.g.*, *Hernandez*, 140 S. Ct. at 739.

Plaintiffs' citation (at 5) to *Knick v. Township of Scott*, 139 S. Ct. 2162 (2019), does not get them around their lack of a cause of action. When the Supreme Court described the Takings Clause as "self-executing" in *Knick*, 139 S. Ct. at 2171, it was not addressing the plaintiff's cause of action. After all, the *Knick* plaintiff sued a local government, not a State, and consequently invoked section 1983, *id.* at 2168—a statutory cause of action that is not available against States, *see Will v. Mich. Dep't of*

*State Police*, 491 U.S. 58, 71 (1989). The propriety of the *Knick* plaintiffs' statutory cause of action was undisputed. *See* 139 S. Ct. at 2168. So when the referred to the "self-executing Fifth Amendment" in holding that the obligation to pay arose directly upon the taking, it was to explain that the plaintiff did not need to wait until compensation had been denied in state proceedings before filing suit in federal court under section 1983. *Id.* at 2172–73. That holding says nothing about an implied cause of action under the Fifth or Fourteenth Amendments.

If *Knick* is relevant here, it is because *Knick* held that takings claims are governed by the same "general rule[s]" as "any other claim grounded in the Bill of Rights." 139 S. Ct. at 2172-73. And "in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts." *Egbert v. Boule*, 142 S. Ct. 1793, 1800 (2022). The panel's recognition that Congress has not created a cause of action is not, as plaintiffs suggest (at 1), a "holding that a federal court may *never* adjudicate [Fifth Amendment takings claims] against a State." If Congress used its section 5 enforcement power to create a cause of action for takings claims against the States, this might be a different case. But Congress has not chosen to do so. The panel opinion respects Congress's choice.

**B.** Plaintiffs are similarly wrong to criticize (at 4–6) the panel's citation to *Azul Pacifico*, which they describe as a "flip-flop[]" by the Ninth Circuit (at 6 n.1). In *Azul Pacifico*, the court ultimately held there is "no cause of action directly under the United States Constitution" to sue for a taking. 973 F.2d at 705. This Court is "always chary to create a circuit split," *Gahagan v. U. S. Citizenship & Immigration*

*Servs.*, 911 F.3d 298, 304 (5th Cir. 2018), and the panel was correct not to create one here.

Plaintiffs are correct that the *Azul Pacifico* panel initially held the plaintiff could sue directly under the Fifth Amendment. *Azul Pacifico, Inc. v. City of Los Angeles*, 948 F.2d 575, 586 (9th Cir. 1991), *reh'g granted, opinion withdrawn*, 973 F.2d 704 (9th Cir. 1992). But on rehearing, the panel corrected its error. 973 F.2d at 705. That change in course hardly helps plaintiffs, as the Ninth Circuit ultimately rejected the very reasoning plaintiffs advance here. *Compare* Plaintiffs' PFREB at 5 (asserting "it is the Constitution itself—'of its own force'—that furnishes 'a basis for a court to award money damages against the government'"), *with Azul Pacifico*, 948 F.2d at 586 (holding "[t]he Constitution itself provides both the cause of action and the remedy").

And the Ninth Circuit was correct to ultimately reject plaintiffs' theory. The precedent cited in its original opinion—and now by plaintiffs (at 6–7)—does not hold that there is a private cause of action to sue a State for a taking directly under the Constitution. *First English Evangelical Lutheran Church of Glendale v. Los Angeles County*, 482 U.S. 304 (1987), addressed the measure of relief, not whether the plaintiff had identified a viable cause of action. *Id.* at 310. When the Court noted that "claims for just compensation are grounded in the Constitution itself," *id.* at 315, it did so to explain its holding that the government owes compensation even for temporary takings. *See id.* at 318–19. The Court said nothing about what cause of action a property owner could use to obtain that compensation; and indeed, no one disputed that the plaintiff could sue Los Angeles County under section 1983.

Likewise, *Jacobs v. United States*, 290 U.S. 13 (1933), addressed the amount of compensation required by the Fifth Amendment in a suit against the United States. *See id.* at 16. There was no question of the cause of action; Congress has authorized private suits seeking compensation for takings by the federal government since it enacted the Tucker Act in 1887.

Moreover, *Knick* does not undermine *Azul Pacifico*. *Knick*'s description of the takings clause as "self-executing," upon which plaintiffs' rely, originally came from *Jacobs* (1933), and *First English* (1987). Like plaintiffs (at 6–7), the original *Azul Pacifico* opinion cited *Jacobs*, *First English*, and Justice Brennan's dissent in *San Diego Gas & Electric Co. v. City of San Diego*, 450 U.S. 621 (1981). 948 F.2d at 586–87. The court had those same decisions before it when it withdrew its opinion and rejected the very arguments plaintiffs make here. Neither *Knick* nor the subsequent Ninth Circuit precedent plaintiff cite (at 6 n.1) addresses the plaintiff's cause of action. As a result, nothing has reinvigorated the Ninth Circuit panel's defunct original decision.

**C.** As the State has discussed in its own petition (at 8–9), the panel did err in concluding plaintiffs' lack of a cause of action deprives the Court of jurisdiction. Moreover, even if it did, plaintiffs' alternative due process claims—which were not at issue in this permissive interlocutory appeal—independently support federal-question jurisdiction. So, the State agrees with plaintiffs' contention (at 9–10) that the panel could not properly order the entire case remanded to state court.

## II. Ruling for Plaintiffs on the Cause of Action Question Would Require the Court to Reach Other Unresolved Issues.

Because the panel ruled for the State on the cause-of-action question, it did not need to reach the two other issues certified for permissive interlocutory appeal, which both turn on the interaction of federal and state law. *First*, plaintiffs' claims are barred by the State's sovereign immunity from liability, which, like the lack of a cause of action, is case-dispositive. *Second*, much of plaintiffs' damages claims are barred by limitations. This issue will significantly impact the scope of the case on remand. Should the Court grant rehearing and hold that plaintiffs have an implied cause of action under the Fifth Amendment, it would then be faced with these two issues and should rule in the State's favor.

### A. Plaintiffs' claims should be dismissed based on the State's sovereign immunity from liability.

1. In seeking rehearing, plaintiffs insist (at 7–8) that the panel's decision conflicts with *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236 (5th Cir. 2005), which held that a State's removal to federal court waives its immunity from suit. *Id.* at 251. That does not, however, warrant en banc review because, far from ruling in conflict with *Meyers*, the panel did not reach the sovereign-immunity issue.

This Court held in *Meyers* that although removal to federal court waives immunity from suit, "the Constitution permits and protects a state's right to relinquish its immunity from suit while retaining its immunity from liability." *Id.* at 252–55. Other circuits agree. *Trant v. Oklahoma*, 754 F.3d 1158, 1172 (10th Cir. 2014); *Stroud v. McIntosh*, 722 F.3d 1294, 1301 (11th Cir. 2013); *Lombardo v. Pa.,*

*Dep't of Pub. Welfare*, 540 F.3d 190, 199 (3d Cir. 2008); *cf. Redgrave v. Ducey*, 953 F.3d 1123, 1125 (9th Cir. 2020) (recognizing same). So does the State.

The sovereign-immunity question here is whether Texas has waived its sovereign immunity from liability for monetary damages. The panel did not need to reach *that* question because plaintiffs' claims failed on an alternative ground—the lack of a cause of action. So plaintiffs are wrong to say (at 1) that "[t]he panel opinion held that sovereign immunity precluded federal question jurisdiction for [the State's] Fifth Amendment Takings Clause claims . . . *despite* the State's waiver of immunity from suit." That is not what the panel held.

To be sure, the State agrees with plaintiffs (at 7–8) that sovereign immunity from liability, as opposed to immunity from suit, does not implicate the court's jurisdiction. But the panel did not hold that sovereign immunity from liability is jurisdictional; indeed, it did not reach the sovereign immunity question at all. Consequently, Plaintiffs' concerns (at 10–13) about the importance of a federal forum for federal takings claims are premised on a holding that does not exist.

**2.** If the en banc Court decides to reach the issue, it should hold that the State's sovereign immunity from liability independently warrants dismissal of plaintiffs' Fifth Amendment takings claims. Here, plaintiffs seek to compel the State to pay monetary damages. Such a claim is generally barred by Texas's sovereign immunity from liability. *See Reata Constr. Corp. v. City of Dall.*, 197 S.W.3d 371, 374 (Tex. 2006); *cf. City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 715 (1999) (takings claims are traditional actions at law seeking to recover damages).

Consequently, plaintiffs cannot proceed unless they identify a waiver of the State's immunity from liability. They cannot do so.

The district court was wrong to conclude that the Texas Constitution's takings clause waives the States' immunity from liability for Fifth Amendment takings claims. *See* ROA.1284. As four Texas Supreme Court justices recently emphasized, the Texas Constitution's Takings Clause is "not coterminous" with the Fifth Amendment's Takings Clause. *City of Baytown v. Schrock*, 645 S.W.3d 174, 183–85 (Tex. 2022) (Young, J, concurring). The Texas Constitution was enacted in 1876, two decades before the Fifth Amendment's just-compensation requirement was applied to the States through the Fourteenth Amendment. It could not have affected a knowing, intelligent waiver of the State's immunity from liability for Fifth Amendment takings claims. *See* Appellant's Br. at 7–13; Reply at 9–12.

Plaintiffs' alternative "plan of the Convention" argument suffers from a similar historical malady. "[A] State may be sued [in federal court] if it has agreed to suit in the 'plan of the Convention,' which is shorthand for 'the structure of the original Constitution itself.'" *PennEast Pipeline Co., LLC v. New Jersey*, 141 S. Ct. 2244, 2258 (2021) (quoting *Alden v. Maine*, 527 U.S. 706, 728 (1999)). The doctrine is about the relationship between congressional and state power. *See Alden*, 527 U.S. at 748. But Congress has not attempted to subject the States to suits like plaintiffs'. And even if the plan-of-the-Convention doctrine were applicable, the historical record is devoid of any indication—much less the necessary "compelling evidence," *Blatchford v. Native Vill. of Noatak and Circle Vill.*, 501 U.S. 775, 781 (1991)—that, by joining the union, the States agreed to subject themselves to liability in private suits brought

under the Fifth Amendment's takings clause for actions by *state* agents that inadvertently cause damage to property through the intervention of a natural disaster.

## B.  Any Fifth Amendment takings claim should be subject to a two-year statute of limitations.

Finally, even if plaintiffs could overcome the lack of a cause of action and the State's immunity from liability, their claims for damages caused by Hurricane Harvey are still untimely under the proper statute of limitations. Where there is no express statute of limitations for a federal claim, the default rule is to "apply the most closely analogous statute of limitations under state law." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 158 (1983). For constitutional claims under section 1983 and *Bivens*, this Court applies Texas's two-year limitations period for personal-injury claims. *See Brown v. Nationsbank Corp.*, 188 F.3d 579, 590 (5th Cir. 1999). Because plaintiffs did not sue until May 2020, that limitations period would bar plaintiffs' claims for damages caused by Hurricane Harvey, which occurred in August 2017. The district court erred when it applied either a six-year limitations period for claims against the United States, 28 U.S.C. §§ 2401(a), 2501, or the ten-year adverse possession period applied to a different kind of takings claim under Texas law. ROA.1282–83.

Borrowing the federal statute was improper. A statute of limitations "reflects a value judgment." *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 463–64 (1975). When it comes to claims against the State of Texas, it is for the State to make that value judgment itself.

As to a borrowed state statute, the district court misapplied Texas law when it identified a ten-year adverse possession period that Texas courts apply as the statute of limitations for claims alleging the government has *appropriated* property. After all, plaintiffs are not alleging an appropriation; they are alleging their property was damaged by floodwater. ROA.1174–75. Under the Texas Constitution, such a claim is subject to a two-year statute of limitations. *See* Appellant's Br. at 23–24. The district court erred in favoring a state-law limitations period that no Texas court would apply to plaintiffs' claims. That is particularly troubling in light of the district court's holding that the Texas Constitution supplies the waiver of immunity that allows the claims to proceed in the first place. ROA.1283; *see* Appellant's Br. at 21.

## Conclusion

The Court should deny plaintiffs' petition for rehearing but grant the State's petition.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Judd E. Stone II
Solicitor General

Benjamin D. Wilson
Deputy Solicitor General

/s/ Natalie D. Thompson
Natalie D. Thompson
Assistant Solicitor General
Natalie.Thompson@oag.texas.gov

Counsel for the State of Texas

14

## CERTIFICATE OF SERVICE

On January 3, 2023, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Natalie D. Thompson
NATALIE D. THOMPSON

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 35(e) because it contains 3,680 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(6) and the type style requirements of Rule 32(a)(5) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Natalie D. Thompson
NATALIE D. THOMPSON