No. 21-40750

**IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT**

**Richard Devillier; Wendy Devillier; Steven Devillier; Rhonda Devillier; et al.,**
***Plaintiffs-Appellees*,**

***v.***

**State of Texas,**
***Defendant-Appellant.***

On Appeal from the United States District Court
for the Southern District of Texas
Galveston Division

# PLAINTIFFS-APPELLEES' UNOPPOSED MOTION TO STAY THE MANDATE


Daniel H. Charest
E. Lawrence Vincent
BURNS CHAREST LLP
900 Jackson Street, Suite 500
Dallas, Texas 75202
469-904-4550
dcharest@burnscharest.com
lvincent@burnscharest.com

Charles Irvine
IRVINE & CONNER PLLC
4709 Austin Street
Houston, Texas 77004
713-533-1704
charles@irvineconner.com

Counsel for Plaintiffs-Appellees

## CERTIFICATE OF INTERESTED PERSONS

### No. 21-40750, *Devillier, et al. v. State of Texas*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5TH CIR. R. 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**Plaintiffs/Appellees:**
Richard & Wendy Devillier; Steven & Rhonda Devillier; David & Angela McBride; Bert Hargraves; Barney & Crystal Threadgill; Barbara Devillier; David Ray; Gary Herman; Rhonda Glanzer; Chris & Darla Barrow; Dennis Dugat; Laurence Barron; Deanette Lemon; Jill White; Beverly Kiker; Yale Devillier, Individually and as Personal Representative of the Estate of Kyle H. Devillier; Charles Monroe; Jacob & Angela Fregia; Jerry & Mary Devillier; Zalphia Hankamer; Larry Bollich; Susan Bollich; Sheila Marino; William Meissner; Taylor McBride; Brian & Kathleen Abshier; Jina Daigle; Coulon Devillier; Halley Ray Sr., Halley Ray Jr. & Sheila Moor; John Rhame; Alex & Tammy Hargraves; William Devillier; Kyle & Allison Wagstaff; Kevin Sonnier; Eugenia Molthen; Bradley Moon; John Roberts; Marilyn Roberts; Savanna Sanders; Robert & Tracey Brown; Josh Baker; Lee Blue; Russell Brown; Margaret Carroll; Kevin Cormier; James & Melissa Davis; Maria Gallegos & Christopher Ferguson; Angela Hughes; Robert Laird; Harold Ledoux; Kacey Sandefur; Tifani Staner; Stephen Stelly; Randall & Patti Stout; Chris Day; Calvin Hill; Michael & Julie Weisse; Eleanor Leonard; Ivy Hamm Claude Roberts; Bryan Olson; Caren Nueman; Floyd Cline, Jr.; Kenneth Coleman; Haylea Barrow; Carol Roberts; Jenica Vidrine; Charles Collier; Sharon Crissey; James Brad Crone; Heather & James Coggin; Clovis Melancon; Leroy Speights; Crossroads Asphalt Preservation, Inc.; Fesi Energy, LLC; Brian Fischer; Curtis Laird; Devon Boudreaux; Richard Belsey; Sharon Clubb; Janet Dancer; Porter May; Cindy Perez; Cecile Jimenez; Scott Hamric; Bruce & Tina Hinds; William Olivier; Esteban Lopez; Billy Stanley; Candace Abshier; Sean Fillyaw; Autumn Minton; Brandon Sanders; Rodney Badon; Charlie Carter; Myra Wellons; Jerry Stepan; Bryan Mills; Cat 5 Resources LLC; Joan Jeffrey; Randy & Monica Brazil; Herbert & Kerry Dillard; Southeast Texas Olive, LLC; and Gulf Coast Olive Investments, LLC.

**Appellees' counsel:**
Daniel Henry Charest
E. Lawrence Vincent
Burns Charest LLP
900 Jackson Street, Ste 500
Dallas, Texas 75202

Charles W Irvine
Irvine & Conner PLLC
4709 Austin Street
Houston, Texas 77004

Lawrence G Dunbar
Dunbar Law Firm, PLLC
13121 Louetta Road, #1240
Cypress, Texas 77429

**Defendant/Appellant:**
The State of Texas

**Appellant's counsel:**
Ken Paxton
Brent Webster
Judd E. Stone II
Benjamin D. Wilson
Natalie D. Thompson
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548

*/s/ Daniel H. Charest*
Daniel H. Charest
Counsel for Plaintiffs-Appellees

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........ ii
TABLE OF CONTENTS ........ iv
TABLE OF AUTHORITIES ........ v
ARGUMENT ........ 1
CONCLUSION ........ 7
CERTIFICATE OF SERVICE ........ 8
CERTIFICATE OF COMPLIANCE ........ 8

# TABLE OF AUTHORITIES

**Cases**

*Cedar Point Nursery v. Hassid*,
141 S. Ct. 2063 (2021) ........ 4

*City of Baytown v. Schrock*,
645 S.W.3d 174 (Tex. 2022) ........ 3

*City of Kenosha v. Bruno*,
412 U.S. 507 (1973) ........ 3

*Clark v. Barnard*,
108 U.S. 436 (1883) ........ 3

*Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*,
527 U.S. 666 (1999) ........ 3

*Dolan v. City of Tigard,*
512 U.S. 374 (1994) ........ 3

*First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*,
482 U.S. 304 (1987) ........ 2

*Gutersloh v. Texas*,
25 F.3d 1044 WL 261047 (5th Cir. 1994) ........ 4

*Hilton v. South Carolina Pub. Rys. Comm'n*,
502 U.S. 198 (1991) ........ 3

*Horne v. Dep't of Agric.*,
576 U.S. 350 (2015) ........ 4

*Indiana State Police Pension Tr. v. Chrysler LLC*,
556 U.S. 960 (2009) ........ 1

*Jacobs v. United States*,
290 U.S. 13 (1933) ........ 2

*Knick v. Township of Scott*,
139 S. Ct. 2162 (2019) ........ 1, 2

*Lapides v. Bd. of Regents,*
535 U.S. 613 (2002) ........ 5

*Lucas v. S.C. Coastal Council*,
505 U.S. 1003 (1992) ........ 2

*Manning v. N.M. Energy, Minerals & Natural Resources Dep't.*,
144 P.2d 87 (N.M. 2006) ........................................................................3

*Mosher v. City of Phoenix*,
287 U.S. 29 (1932) ........................................................................3

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*,
429 U.S. 274 (1977) ........................................................................5

*PennEast Pipeline Co., LLC v. New Jersey*,
141 S. Ct. 2244 (2021) ........................................................................3, 4, 6

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235 (1981) ........................................................................5

*SDDS, Inc. v. State*,
2002 S.D. 90, 650 N.W.2d 1 ........................................................................3

*Torres v. Texas Department of Public Safety*,
142 S. Ct. 2455 (2022) ........................................................................4, 6

*Will v. Mich. Dep't of State Police*,
491 U.S. 58 (1989) ........................................................................3

*Zwickler v. Koota*,
389 U.S. 241 (1967) ........................................................................4

**Statutes**

28 U.S.C. § 1343 ........................................................................9

**Rules**

2 Joseph Story, COMMENTARIES ON THE CONSTITUTION OF THE UNITED STATES § 1399 (5th ed. 1891) ........................................................................10

S. Ct. R. 10(c) ........................................................................7

Pursuant to Federal Rule of Appellate Procedure 41(d) Plaintiffs-Appellees request a stay of issuance of the mandate in this case for a period of 90 days so that they may prepare and file a petition for a writ of certiorari to the U.S. Supreme Court. Defendant Appellant the State of Texas does not oppose the relief sought.

## ARGUMENT

Federal Rule of Appellate Procedure 41 directs that a stay of the mandate is warranted where a certiorari petition will present substantial and meritorious questions arising from the panel's decision and there is good cause for a stay. In determining whether to grant a stay, courts consider whether there is "(1) a reasonable probability that four Justices will consider the issue sufficiently meritorious to grant certiorari … ; (2) a fair prospect that a majority of the Court will conclude that the decision below was erroneous; and (3) a likelihood that irreparable harm will result from the denial of a stay." *Indiana State Police Pension Tr. v. Chrysler LLC*, 556 U.S. 960, 960 (2009).

Supreme Court Rule 10 provides that certiorari may be granted when "a United States court of appeals has decided an important question of federal law . . . in a way that conflicts with relevant decisions of this Court." S. Ct. R. 10(c). The panel's holding that the Takings Clause of the Fifth Amendment to the United States Constitution does not provide a cause of action against a State conflicts with Supreme Court precedent.

First, in *Knick v. Township of Scott, Pa.*, 139 S. Ct. 2162, 2172 (2019), the Court recognized the "self-executing Fifth Amendment" provides a right to sue for an uncompensated taking. As *Knick*'s discussion of the Court's prior decisions in *Jacobs v.*

*United States*, 290 U.S. 13 (1933) and *First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304 (1987), makes clear, the Takings Clause provides a property owner a claim for compensation—"a basis for a court to award money damages against the government"—which arises directly under the Constitution "of its own force." 139 S. Ct. at 2171-72.

In addition, *Knick* expressly stated that "no matter what sort of procedures the government puts in place to remedy a taking, a property owner has a Fifth Amendment entitlement to compensation as soon as the government takes his property without paying for it," and that this principle "applies to takings by the State." 139 S. Ct. at 2171-72. *Knick*'s recognition that a State could be liable for the payment of just compensation for a taking of private property "under the Fifth and Fourteenth Amendments" echoes that of *Lucas v. S.C. Coastal Council*, 505 U.S. 1003 (1992), where the Court held that the State of South Carolina could be liable for "a taking of private property requiring the payment of just compensation." The Court expressly directed that if the South Carolina law under consideration "declares 'off-limits' all economically productive or beneficial uses of land goes beyond what the relevant background principles would dictate, compensation must be paid [by the State] to sustain it."

The panel opinion is also contrary to those opinions from state supreme courts (including Texas), which have recognized a Fifth Amendment Takings Clause claim

may be brought against a State.[1] The direct conflict between the panel opinion and other courts of last resort

Other substantial questions raised by the panel's decision could also be presented for review, including:

a. The jurisdictional basis for a Takings Clause claim against a state and whether 42 U.S.C. § 1983 has any application to Appellees' claims;[2]

b. Whether a State may waive its sovereign immunity to a claim under the self-executing Takings Clause by consenting to suit in federal court through removal;[3] and

---

[1] *See, e.g.*, *City of Baytown v. Schrock*, 645 S.W.3d 174, 176 (Tex. 2022) (noting that both the Texas and federal constitutions "require the government to compensate property owners when it takes their property for public use. This constitutional right waives the government's immunity from lawsuits—immunity that otherwise often insulates the public treasury from claims for damages."); *Manning v. N.M. Energy, Minerals & Natural Resources Dep't*, 144 P.2d 87, 91-98 (N.M. 2006) (analysis concluding sovereign immunity does not bar Fifth Amendment takings claims brought against a state in state court); *SDDS, Inc. v. State*, 2002 S.D. 90, ¶ 20, 650 N.W.2d 1, 8 ("The Fifth Amendment in general and the takings clause in particular are integral parts of the Constitution, and they are made applicable to the states through the Fourteenth Amendment.").

[2] *See Mosher v. City of Phoenix*, 287 U.S. 29, 32 (1932) (holding Fifth Amendment claim "presented a substantial federal question, and that it was error of the District Court to refuse jurisdiction"); *see also Hilton v. S.C. Pub. Rys. Comm'n*, 502 U.S. 198, 205 (1991) (noting the determination in *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989), that a State is not a person within the scope of section 1983 rested on an "ordinary rule of statutory construction"); *City of Kenosha v. Bruno*, 412 U.S. 507 (1973) (jurisdictional analysis under 28 U.S.C. § 1343 for section 1983 actions is separate and distinct from that regarding jurisdiction under 28 U.S.C. § 1331).

[3] *See PennEast Pipeline Co., LLC v. New Jersey*, 141 S. Ct. 2244, 2262 (2021) (noting that when—as here—"a State waives its immunity and consents to suit in federal court, the Eleventh Amendment does not bar the action"); *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999) (noting a state's sovereign immunity is not an absolute protection from suit and that "a State may waive its sovereign immunity by consenting to suit" citing *Clark v. Barnard,* 108 U.S. 436, 447-48 (1883)).

c. Whether a state's assertion of sovereign immunity from liability is an affirmative defense which a state can waive either by recognizing it is liable on that claim in its own courts,[4] or through the plan of the Convention;[5]

d. Whether the federal courts have the authority to enforce a constitutional right to just compensation for the taking of private property by a state—a core principle underlying the drafting of the Constitution;[6] and finally

e. If, in fact, the Takings Clause does not provide a claim for just compensation when a citizen's private property is taken by a state for public use, on remand how should the district court address Appellees' Fourteenth Amendment due process claims which certainly lie against the state.[7]

---

[4] *See Wisconsin Dep't of Corrections v. Schacht*, 524 U.S. 381, 389 (1998) (recognizing that "the Eleventh Amendment grants the State a legal power to assert a sovereign immunity defense should it choose to do so. The State can waive the defense."); *Gutersloh v. Texas*, 25 F.3d 1044, 1994 WL 261047, *1 (5th Cir. 1994) (cited by the panel) (noting that the State "admits the courts of the State of Texas are open to inverse condemnation damage claims against state agencies on the basis of the Fifth Amendment, as applied to the states through the Fourteenth Amendment, as well as on the basis of the Texas Constitution and laws").

[5] *See Torres v. Texas Department of Public Safety*, 142 S. Ct. 2455 (2022) (via the plan of the Convention, Texas waived immunity from liability for money damages for a claim under the Uniformed Services Employment and Reemployment Rights Act of 1994); *PennEast Pipeline Company, LLC v. New Jersey*, 141 S. Ct. 2244, 2255 (2021) (holding that even though when "the Constitution and Bill of Rights were ratified, they did not include the words eminent domain," the plan of the Convention effected waiver by New Jersey of immunity from federal eminent domain power since "The Takings clause of the Fifth Amendment … recognized the existence of such a power.").

[6] "The Founders recognized that the protection of private property is indispensable to the promotion of individual freedom. As John Adams tersely put it, property must be secured, or liberty cannot exist. This Court agrees, having noted that protection of property rights is necessary to preserve freedom and empowers persons to shape and to plan their own destiny in a world where governments are always eager to do so for them." *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2071 (2021) (cleaned up, citations omitted); *see also Horne v. Dep't of Agric.*, 576 U.S. 350, 358-59 (2015) (tracing foundation of Takings Clause protection of private property from Magna Carta and pre-constitutional state legislative enactments, and the recognition of their prominence by the founding fathers and early Supreme Court opinions); *see also* 2 J. Story, COMMENTARIES ON THE CONSTITUTION OF THE UNITED STATES § 1399, at 273 (5th ed. 1891) ("[N]o State government can be presumed to possess the transcendental sovereignty to take away vested rights of property.").

[7] *See Zwickler v. Koota*, 389 U.S. 241, 246-48 (1967) (noting that reliance on state courts to vindicate essential constitution rights "was completely altered after the Civil War" when, with the creation of federal question jurisdiction, Congress "gave the federal courts the vast range of power which had lain dormant in the Constitution since 1789" and "imposed the duty upon all levels of the federal judiciary to give due respect to a suitor's choice of a federal forum for the hearing and decision of his federal

The extensive impact of the panel's opinion generates a variety of significant questions of law now ripe for certiorari review.[8]

There is also a reasonable probability that four Justices will consider the issue sufficiently meritorious to grant certiorari and a fair prospect that a majority of the Court will conclude that the decision below was erroneous. A reasonable probability that certiorari will be granted is confirmed by the prior statements from the Court regarding the certworthy nature of the questions to be presented. *See Lapides v. Bd. of Regents,* 535 U.S. 613, 617-18 (2002) (noting cert had been granted on the question of whether a state can be sued in federal court on a removed claim, but not reaching it because section 1983 did not provide a basis for liability against the state for breach of a federal statute); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 279 (1977) (leaving "for another day" the question whether § 1983 limits the scope of jurisdiction under § 1331).

The split of Justices (and the vigorous dissents) in recent decisions involving application of the "plan of the Convention" doctrine also supports Appellees' belief in a reasonable probability that four Justices will consider the issue sufficiently meritorious to grant certiorari and of a fair prospect that a majority of the Court will conclude that

---

constitutional claims" since "escape from that duty is not permissible merely because state courts also have the solemn responsibility, equally with the federal courts, to guard, enforce, and protect every right granted or secured by the constitution of the United States") (citations omitted, cleaned up).

[8] *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 246 & n.12 (1981) (noting Court may determine on certiorari review any question "necessary for the proper disposition of the case").

the decision below was erroneous. *See Torres v. Texas Dep't of Public Safety*, 142 S. Ct. 2455 (2022) (holding the State of Texas waived immunity from liability for a judgment of monetary damages by virtue of the "structure of the original Constitution itself"—with four justices dissenting); *PennEast Pipeline Co., LLC v. New Jersey*, 141 S. Ct. 2244, 2251-52, 2255 (2021) (holding States surrendered their immunity from the exercise of the federal eminent domain power when they ratified the Constitution—even though neither the Constitution nor Bill of Rights include the words "eminent domain"—based on fact such a power in had existed in England as well as the early Colonies and the Fifth Amendment's Takings Clause provided "a right for a property owner to seek recovery for any loss of value" for an uncompensated taking).

Finally, good cause exists to issue a stay given the likelihood that irreparable harm will result from the denial of a stay. Prosecution of Appellees' state constitution takings and Fourteenth Amendment Due Process claims through discovery or new Rule 12(c) motion practice will cause the waste of resources of not only the parties but District Judge Brown and Magistrate Judge Edison as well should the opinion be reversed. Moreover, this case is set for trial in June of 2023. Should the mandate not be stayed and Appellees lose at trial on their remaining claims, reversal of the opinion on appeal would trigger a second trial since the first will not be *res judicata* on Appellees' federal inverse condemnation claim given the substantive differences between it and its Texas state constitutional counterpart. Finally, the potential disputes over whether to remand the remaining claims also would be rendered moot (and perhaps, if granted, trigger a

new round of removals) if the opinion is reversed by the Court. Thus, while the burden of continued litigation is usually not irreparable harm, in this circumstance the finding should be made, and the balance of equities held to favor the requested stay.

## CONCLUSION

Based on the foregoing, a stay of the mandate should issue to permit the preparation and filing of a petition for writ of certiorari. Defendant-Appellant the State of Texas does not oppose the relief sought by this motion.

Dated: January 17, 2023

Respectfully submitted,

*/s/ Daniel H. Charest*

Daniel H. Charest
E. Lawrence Vincent
BURNS CHAREST LLP
900 Jackson Street, Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
dcharest@burnscharest.com
lvincent@burnscharest.com

Charles Irvine
IRVINE & CONNER PLLC
4709 Austin Street
Houston, Texas 77004
Telephone: (713) 553-1704
charles@irvineconner.com

Counsel for Plaintiffs-Appellees

**CERTIFICATE OF SERVICE**

On January 17, 2023, this corrected brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Malwarebytes and is free of viruses.

*/s/ Daniel H. Charest*
Daniel H. Charest

**CERTIFICATE OF COMPLIANCE**

The foregoing complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 2,215 words, excluding the parts exempted by Rule 32(f); and complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) as it has been prepared in a proportionally spaced typeface (14-point Garamond) using Microsoft Word (the same program used to calculate the word count).

*/s/ Daniel H. Charest*
Daniel H. Charest